J-S30033-20

2020 PA Super 178

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRADY COLLIN DISTEFANO | : | No. 1873 WDA 2019 |

Appeal from the Order Entered November 14, 2019
In the Court of Common Pleas of Indiana County Criminal Division at
No(s):  CP-32-CR-0000416-2017

BEFORE:   MURRAY, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    FILED JULY 29, 2020

The Commonwealth of Pennsylvania appeals the order of the Court of Common Pleas of Indiana County granting Appellee Brady Collin DiStefano's motion in limine in part by precluding the prosecution from offering evidence relevant to the causation of the death of the victim, Caleb Zweig.  The Commonwealth argues that the trial court's pre-trial order will substantially handicap the prosecution of this case in a future jury trial.  We reverse the trial court's order and remand for further proceedings.

This Court previously summarized the factual background of this case as follows:

> At approximately 11:00 p.m. on Friday, February 3, 2017, DiStefano and two of his fraternity brothers at the Indiana University of Pennsylvania, Trevor King ("King") and Caleb Zweig ("Zweig"), left a house party, located on Wayne Avenue in Indiana, to walk back to their respective homes. See N.T. [], 4/16/17, at 3-6, 25-26. King's testimony at the preliminary

_____

[*] Former Justice specially assigned to the Superior Court.

hearing established the following. King, Zweig, and DiStefano had all consumed alcohol during the evening. Id. at 4-5, 7, 22-24. DiStefano was "pretty intoxicated at the time and [exhibited] slurred speech." Id. at 7. King stated that Zweig "was also intoxicated but … not nearly as bad," i.e., as DiStefano. Id. While the three young men were walking on the sidewalk, King was approximately ten feet in front of DiStefano and Zweig. Id. at 26-27. King then heard DiStefano and Zweig "bickering a little bit" and "arguing about something." Id. at 6, 27.

King described what next transpired as follows:

> I heard them bickering and I turned around and they were [ ] in each other's face and like what guys do [sic], and they had their chests puffed out a little bit[,] and [ ] not really harming each other[,] [ ] just poking each other. I said to quit it and turned around and kept walking. And I watched for a few more seconds and I heard a scuffle[,] or heard something that got my attention[,] and I turned back around and I saw [that Zweig] was on his back[, i.e., on the sidewalk,] and [DiStefano] [ ] had his back toward me and was kneeling over top of [Zweig.]
> * * *
> [DiStefano] was on top [of Zweig]. [DiStefano's] knees were on the pavement but his hands were on [Zweig's] chest area and I didn't really see. I didn't take time to assess the situation[,] and I ran up and separated the two. And I threw [DiStefano] off of [Zweig].

Id. at 7-8 (footnote added, questions by the prosecutor and some paragraph breaks omitted). King stated that DiStefano did not resist when King physically removed DiStefano from Zweig. Id. at 9, 32; but see also id. at 31-32 (wherein King stated that "it was pretty forceful[,] like I yanked [DiStefano] off of [Zweig]").

* * *

King acknowledged that, in his police report, he had stated that he saw DiStefano's "hands [ ] up around [Zweig's] neck or chest area[, but] I wasn't really sure." Id. at 9. On cross-examination, King stated that DiStefano's "hands were on [Zweig,] but I don't know if [DiStefano] was choking him or not[,] and [DiStefano's hands] were up here in this area[,]" (i.e., King demonstratively motioned to his neck area). Id. at 28. King agreed that it was "just seconds before [King] turned around[, i.e., upon hearing the

scuffle,] that [King] went over and [ ] helped, [and] pulled [DiStefano] off[.]" Id. at 31. King stated that "the longest time that I guess [DiStefano] could have had his hands on [Zweig] was like five or six seconds tops." Id.

King testified that the following transpired after he "threw [DiStefano] off of" Zweig:

> So[,] immediately there was probably like two or three people that came around. [Zweig] was on his back on the sidewalk[,] and so I knelt down and I picked him up so [that] he was sitting up[,] and made sure he was still breathing [ ] okay[.] [ ] I didn't check his pulse or anything but he was visibly breathing and his chest was rising and falling[,] and some weird noises [were] coming from his throat. So I just thought that he was okay enough[,] so I just held him up there. And then at that time[,] … [the] three [other students who] … came from across the street [ ] were helping me.

Id. at 9; see also id. at 36 (wherein King stated that Zweig was "groaning at the time and moaning."). King explained that although Zweig was breathing at this time, he was unconscious. Id. at 10. King and three other individuals then picked Zweig up, carried him a few feet to lay him on the grass, and positioned him on his side. Id. at 34-35. Someone called 911, and an ambulance was dispatched to the scene. Id. at 11, 35.

After the ambulance arrived, King looked around to locate DiStefano but could not find him. Id. at 11-12. Accordingly, King began to walk back to the house that was hosting the house party in an attempt to locate DiStefano, and spotted him trying to re-enter the house from the rear stairs. Id. at 12. King stated that the residents of the house would not permit DiStefano to enter because the police had been called. Id. King said that he would assist DiStefano to get back home, as he was significantly intoxicated. Id. at 13. King testified that he noticed DiStefano had sustained a scrape to the side of his head, but King did not know how this had occurred. Id. at 12, 30. King eventually got DiStefano back to DiStefano's apartment, at which time King left and walked to his own apartment. Id. at 14.

In the meantime, the ambulance rushed Zweig to the emergency room at the Indiana Regional Medical Center. Id. at 76. However,

despite lifesaving efforts by medical professionals, Zweig died shortly after arriving. Id. Zweig's body was then released to the Indiana County Coroner's Office for an autopsy. Id.

The police officer who had received the initial dispatch on the night of the incident, Detective John Scherf ("Detective Scherf") of the Indiana Borough Police Department, also testified at the preliminary hearing. Detective Scherf stated that shortly after Zweig's death, he conducted interviews of potential witnesses that night. Id. at 76-77. On the morning after the incident, Detective Scherf interviewed King at the police station, and King gave a written and verbal statement. Id. at 78, 15-16.

The trial court described what transpired after Detective Scherf had conducted his interviews.

> [Detective Scherf] proceeded to [DiStefano's] apartment to investigate. When Detective Scherf arrived at [DiStefano's] apartment in the early morning hours of February 4, 2017, a female answered the door, indicated [that DiStefano] was sleeping inside, and that he had been injured in a fight with someone named Caleb. Detective Scherf then applied for and was issued a search warrant for [DiStefano's] apartment and cellular phone[,] as well as a warrant for [DiStefano's] person. Shortly thereafter, [DiStefano] was transported to the Indiana Borough Police Station to be interviewed. [DiStefano] was later charged with aggravated assault and[,] after the receipt of Zweig's autopsy results, with criminal homicide.

Trial Court Opinion and Order, 11/13/17, at 1-2 (footnotes added, some capitalization omitted).

The forensic pathologist who performed the autopsy on Zweig, Ashley Zezulak, M.D. ("Dr. Zezulak"), also testified at the preliminary hearing. The trial court summarized Dr. Zezulak's testimony as follows:

> When asked if she was able to render an opinion on the cause of death, she replied, "[s]omewhat of an opinion. More from an investigative standpoint[,] seeing that I didn't find any significant anatomical findings during the autopsy." ([N.T., 4/16/17,] at 51[ ]). Dr. Zezulak stated that[, in her autopsy report,] she indicated [Zweig's] cause of death was,

"[a]sphyxiation, secondary to presumed chokehold and chest compression." ([Id.] at 52[; see also id. at 53-54 (wherein Dr. Zezulak explained that "[i]t is not uncommon for us to have cases where we do not have any certain anatomic findings[,] when we work with the police and the coroners and the story evolves. It is more of what we call a diagnosis of exclusion.")]). She stated that the only trauma she found was a scalp hemorrhage, but that it was not large enough to have caused [Zweig's] death[.]

* * *

When asked about how she arrived at her opinion, Dr. Zezulak indicated that she had relied on information given to her by Jerry Overman [("Overman")], the Indiana County Coroner. ([Id.] at 66[ ]). According to Overman, [Dr. Zezulak recounted, Zweig] had been found unresponsive after a physical assault. ([Id.] at 67[ ]).

Trial Court Opinion and Order, 11/13/17, at 3-4 (footnotes and emphasis added).

Commonwealth v. DiStefano, 1785 WDA 2017, 2018 WL 5076959, at *1-3 (Pa.Super. October 18, 2018) (unpublished memorandum) (footnotes omitted). After the preliminary hearing, the magisterial district judge found the prosecution had presented a prima facie case for both criminal homicide and aggravated assault and thus, bound the charges over for court.

On September 4, 2017, DiStefano filed a habeas petition requesting that the trial court dismiss the homicide and aggravated assault charges on the basis that the prosecution did not have sufficient evidence to establish a prima facie case that DiStefano committed these crimes. After a hearing, the trial court entered an order on November 9, 2017, granting DiStefano's habeas petition and dismissing both charges. The Commonwealth appealed.

On October 18, 2018, this Court affirmed the trial court's November 9, 2017 order in part in so far as it dismissed the criminal homicide charge

against DiStefano. See DiStefano, 2018 WL 5076959, at *1-3. This Court agreed with the trial court's assessment that the Commonwealth failed to present a prima facie case to support a homicide conviction as the prosecution's evidence only established a "tenuous inference that DiStefano had caused Zweig's death." DiStefano, 2018 WL 5076959, at *7.

However, this Court reversed the trial court's dismissal of the aggravated assault charge, finding that the evidence of record established a prima facie case of aggravated assault. This Court expressly found that the evidence presented by the Commonwealth supported an inference that the victim was knocked to the ground as a result of the altercation.

In addition, when viewing the evidence in the light most favorable to Commonwealth, this Court found there was sufficient evidence to establish that the victim suffered serious bodily injury and that DiStefano had met the "recklessness" element of the aggravated assault, as his conduct "almost assured that Zweig would sustain an injury." DiStefano, 2018 WL 5076959, at *7. As a result, this Court remanded for further proceedings.

Upon remand, on August 22, 2019, DiStefano filed motions in limine, seeking, inter alia, to exclude all evidence of Zweig's death from being admitted as evidence at trial. On August 30, 2019, the trial court entered an order reserving its ruling on this motion and on November 8, 2019, DiStefano renewed his motions in limine. On November 14, 2019, the trial court entered an order, stating in pertinent part:

> [DiStefano's] Motion in Limine seeking to exclude evidence of the victim's death is granted in part and denied in part. The Commonwealth shall be permitted to present evidence that the victim is deceased to explain to the jury his absence at trial and why the expert testimony from a forensic pathologist is being presented. The homicide charge has been dismissed, therefore, no evidence shall be permitted to prove that [DiStefano] caused the victim's death. If requested by the defense the Court will instruct the jury as to the weight to be given to the victim's death.

Order, 11/14/19, 2.

On December 12, 2019, the Commonwealth filed a notice of appeal, certifying that the trial court's November 14, 2019 order terminates or substantially handicaps the prosecution of this case. See Pa.R.A.P. 311(d).

The Commonwealth raises the following question for review on appeal:

> Whether the trial court erred as a matter of law and clearly abused its discretion when it granted in part and denied in part [DiStefano's] Motion in Limine finding that the Commonwealth is only permitted to present evidence of the Victim's death to explain his absence from trial and not to prove [DiStefano] caused the Victim's death when [DiStefano] is facing trial on a charge of Aggravated Assault and death is indicative of serious bodily injury.

Commonwealth's Brief, at 8.

Our standard of review is as follows:

> when reviewing the denial of a motion in limine, we apply an evidentiary abuse of discretion standard of review. See Commonwealth v. Zugay, 745 A.2d 639 (Pa. [Super.] 2000) (explaining that because a motion in limine is a procedure for obtaining a ruling on the admissibility of evidence prior to trial, which is similar to ruling on a motion to suppress evidence, our standard of review of a motion in limine is the same of that of a motion to suppress). The admission of evidence is committed to the sound discretion of the trial court and our review is for an abuse of discretion.

Commonwealth v. Kane, 188 A.3d 1217, 1229 (Pa.Super. 2018) (quoting Commonwealth v. Stokes, 78 A.3d 644, 654 (Pa. Super. 2013) (some citations omitted)).

Specifically, the Commonwealth argues that the trial court abused its discretion in finding any evidence relevant to the causation of the victim's death was irrelevant and unduly prejudicial.[1] The Commonwealth asserts that the trial court's ruling "create[s] an unrealistic construct that handcuffs the Commonwealth unreasonably for the duration of [DiStefano's] trial and sterilizes the trial in favor of [DiStefano]." Commonwealth's Brief, at 17.

As a general rule, "the threshold inquiry with admission of evidence is whether the evidence is relevant." Commonwealth v. Cook, 597 Pa. 572, 602, 952 A.2d 594, 612 (2008) (citations omitted). Our rules of evidence state that "[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Pennsylvania Rule of Evidence 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Pa.R.E. 401. Further, this Court has provided that "[e]vidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference

---

[1] DiStefano's motion in limine solely challenged the admissibility of evidence relevant to the causation of the victim's death on the grounds that it was irrelevant and unduly prejudicial. DiStefano did not challenge whether Dr. Zezulak offered proper expert testimony under Pa.R.E. 702.

or presumption regarding a material fact." Commonwealth v. Akhmedov, 216 A.3d 307, 316 (Pa.Super. 2019).

However, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

In resolving DiStefano's motion in limine prior to his trial on the charge of aggravated assault, the trial court held that the prosecution would be permitted to offer evidence of Zweig's death as well as Dr. Zezulak's finding that Zweig had suffered a scalp hemorrhage, but would be precluded from offering evidence seeking to prove that DiStefano's conduct caused the victim's death. The trial court reasoned as follows:

> The record as it presently stands on this particular issue is the exact record that existed following the hearing on [DiStefano's] Pre-Trial Motions. Accordingly, this is the sole evidence that the Court was able to consider when ruling on [DiStefano's] Motions in Limine. To the Court's knowledge, at no time since the criminal homicide charges were dismissed did District Attorney Dougherty take any further action to obtain additional expert testimony or evidence supporting a causal connection between [DiStefano's] actions and Zweig's death. Even if the Commonwealth had medical evidence in addition to Dr. Zezulak's testimony, District Attorney Dougherty failed to make any attempt to present this evidence to the Court despite being given the opportunity to do so.
>
> In ruling on [DiStefano's] Motion in Limine, the Court determined that the fact that Zweig suffered a scalp hemorrhage was relevant to the aggravated assault charge. Introduction of this evidence of this injury necessitates Dr. Zezulak's testimony of her autopsy findings. Evidence of Zweig's death is probative because it provides an explanation for why he will not be present

at trial and why the testifying medical professional is a medical pathologist. For these reasons, the Court found that the probative value of the evidence of the fact of Zweig's death outweighed prejudice to [DiStefano] and was admissible.

With respect to the admissibility of evidence of causation of death, the Court found that any probative value was outweighed by unfair prejudice to [DiStefano]. As discussed above, Dr. Zezulak was unable to definitively state how Zweig died and found no physical evidence of trauma that would have been fatal. This, along with other testimony, failed to establish that [DiStefano] caused Zweig's death, and led to the dismissal of the homicide charge against [DiStefano]. Furthermore, despite having ample opportunity to do so, the Commonwealth has failed to present any supplemental evidence relating to the cause of death. For this reason, it would be highly prejudicial to [DiStefano] to allow the Commonwealth to suggest that [DiStefano's] actions in any way caused Zweig's death or advance such a theory. Due to the lack of supporting evidence on the issue, the Court does not believe it was error to exclude evidence of causation of death.

Trial Court Opinion, 2/4/20, at 4-5.

In this case, the Commonwealth seeks to prosecute DiStefano with Aggravated Assault under Section 2702 of the Crimes Code, which provides that "[a] person is guilty of aggravated assault if he: [] attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301 (emphasis added).

In addition, this Court has clarified that:

- 10 -

> [w]here the victim suffers serious bodily injury, the Commonwealth is not required to prove specific intent. The Commonwealth need only prove the defendant acted recklessly under circumstances manifesting an extreme indifference to the value of human life. For the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue.

Commonwealth v. Patrick, 933 A.2d 1043, 1046 (Pa.Super. 2007) (en banc) (citations and paragraph breaks omitted) (emphasis added).

We agree with the Commonwealth that evidence related to the causation of the victim's death is relevant to allow the factfinder to determine whether DiStefano (1) caused the victim serious bodily injury that created a "substantial risk of death" and (2) acted with recklessness in that his assault of the victim was "performed under circumstances which almost assure[d] that injury or death [would] ensue." 18 Pa.C.S.A. § 2301; Patrick, supra.

The result of the trial court's decision to exclude any evidence related to the causation of the victim's death is that Dr. Zezulak will not be permitted to testify as to her expert opinion that the victim's cause of death was "asphyxiation, secondary to presumed chokehold and chest compression." N.T. 4/16/17, at 52.

However, we disagree with the trial court's finding that it would be highly prejudicial to the defense to allow Dr. Zezulak to offer an expert opinion on causation of the victim's death. Our Supreme Court has held "in the case of expert testimony, [t]o be relevant, evidence need not be conclusive." Commonwealth v. Hawk, 551 Pa. 71, 77, 709 A.2d 373, 376 (1998)

(quoting Commonwealth v. Crews, 536 Pa. 508, 523, 640 A.2d 395, 402 (1994)).

Our courts have reasoned that expert testimony is not rendered inadmissible simply because the expert's data or examination results are inconclusive. See Commonwealth v. Minerd, 562 Pa. 46, 753 A.2d 225 (2000) (concluding trial court did not err in allowing expert to testify regarding her inconclusive examination results of her physical examination of the child victims); Hawk, 551 Pa. at 79, 709 A.2d at 377 (finding trial court abused its discretion in precluding the prosecution from offering an expert's testimony regarding rape kit test results, stating that "[t]the inconclusiveness of the negative test results does not render the scientist's testimony inadmissible").

As such, Dr. Zezulak's opinion as to the causation of the victim's death is admissible evidence. The weight and persuasiveness of Dr. Zezulak's testimony will be for the jury to decide. It is well-established that "jurors, as factfinders, are entrusted with the responsibility of evaluating the evidence and rendering a decision based on the evidence presented and the inferences deduced therefrom." Minerd, 562 Pa. 46, 57, 753 A.2d 225, 231. The jury will be "free to evaluate Dr. Zezulak's testimony and accept or reject some, none, or all of her expert opinion." Id. at 58, 753 A.2d at 231-232 (citation omitted).

Moreover, in addition to this expert testimony, there is the eyewitness testimony of King, who reported that after hearing a scuffle, he saw the victim laying on his back while DiStefano had his knees over the victim and his hands

on the victim's chest area. It is within the province of the jury to make credibility determinations on such evidence as well as with Dr. Zezulak's testimony.

For the foregoing reasons, we find that the lower court abused its discretion in excluding evidence related to the causation of the victim's death. As such, we reverse the trial court's order and remand for further proceedings.

Order reversed. Remand for further proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/29/2020