J-S56036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| L.M. | : | |
| | : | |
| Appellant | : | No. 1268 EDA 2020 |

Appeal from the Judgment of Sentence Entered May 28, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0003513-2018

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:            Filed: January 28, 2021

L.M. appeals from the judgment of sentence imposed in the Court of Common Pleas of Bucks County (trial court) following his jury conviction of aggravated assault, possession of an instrument of a crime and recklessly endangering another person[1] for the shooting of R.P.[2]  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(1), 907(a) and 2705.  L.M. was found not guilty of attempted homicide, 18 Pa.C.S. § 901(a).  A charge of person not to possess a firearm, 18 Pa.C.S. § 6105(a)(1), was severed from the case.

[2] We have used initials in this Memorandum to protect the identity of R.P.'s minor son (Child).  Child's mother is V.C., L.M.'s then-girlfriend.

**I.**

On February 24, 2018, at about 5:50 p.m., R.P. arrived at the Pennsbury Racquet Club to watch Child participate in an amateur boxing match. (*See* N.T. Trial, 3/05/19, at 38-39, 41). R.P. attended the event with his long-time friend and co-worker, A.D. Upon entering the gymnasium, R.P and A.D. greeted Child's maternal grandmother and then approached V.C. and L.M. to greet them. (*See id.* at 43-44). When R.P. extended his hand to shake L.M.'s hand, L.M. refused the gesture and said, "don't shake my hand, you was talking shit." (*Id.* at 47). As L.M. grew more agitated, they took the discussion outside into the hallway. (*See id.* at 49).

As L.M., R.P., A.D. and V.C. went into the hallway, L.M. reached for his waist. (*See* N.T. Trial, 3/06/19, 136-37, 142). A.D. punched L.M. and he fell to his knees. (*See id.*). During the altercation, L.M. shot R.P. in the lower left back and R.P.'s "legs just went crazy, like they were turning the opposite . . . way your legs are supposed to go." (N.T. Trial, 3/05/19, 53; *see also* N.T. Trial, 3/06/19, at 117). L.M. ran up a nearby staircase with a black semi-automatic firearm in his hand. (*See* N.T. Trial, 3/05/19, at 126-27). He ran by Philadelphia Police Officer Michael Minor, who was off-duty at the time and attending the boxing match with his family. (*See id.* at 118-20, 126). Officer Minor followed L.M. towards the exit and recorded L.M.'s appearance with his cell phone. (*See id.* at 126-27). Officer Minor and two other men ran after L.M, but lost sight of him. (*See id.* at 129-30). Video camera surveillance

footage captured L.M. running by a local grocery store. (*See* N.T. Trial, 3/07/19, at 54, 56-59).

Several members of the Falls Township Police Department responded to the scene of the shooting to investigate, including Officer Francisco Olmeda and Corporal Michael Callahan. Officer Olmeda spoke with V.C. and while they talked, L.M. called her and said: "I shot [R.P.]". (N.T. Trial, 3/06/19, at 175, 250-52).

Corporal Callahan was given a shell casing by an unknown witness at the racquet club, who had found it on the hallway floor within ten feet from where R.P. was lying. (*See id.* at 201-03, 224). The shell casing was admitted into evidence at trial without objection by defense counsel. (*See id.* at 203). Consistent with police department practice, the casing was not tested for DNA or fingerprint evidence because any such evidence evaporates when a gun is fired. (*See* N.T. Trial, 3/07/19, at 46-47). The firearm used in the shooting was never recovered. (*See id.* at 50-51).

R.P. was transported to Saint Mary Medical Center where he underwent surgery to remove a bullet from his right thigh. (*See* N.T. Trial, 3/06/19, at 116-18, 121). He remained hospitalized for 32 days and was on bedrest for six weeks thereafter. (*See* N.T. Trial, 3/05/19, at 58, 60-61).

Prior to trial, counsel for L.M. filed a motion to sever the person not to possess firearms charge. On March 4, 2019, just before jury selection, L.M. asked the court to dismiss his attorney and appoint new counsel because he

disagreed with counsel's decision to seek severance of the firearms offense. (*See* N.T. Trial, 3/04/19, at 6-13). The court shared counsel's concern that inclusion of this charge with the remaining offenses at trial would prejudice L.M. (*See id.* at 13). It denied his request for appointment of new counsel and severed the firearms offense. (*See id.*).

During trial, Officer Minor testified as a lay witness in full police uniform over defense counsel's objection to his attire. (*See* N.T. Trial, 3/05/19, at 111). The Commonwealth explained that Officer Minor was on duty that day and was returning to work directly after his testimony. (*See id.* at 111-12). The trial court overruled the objection and issued a cautionary instruction to the jury, emphasizing that although Officer Minor was wearing a police uniform, he was testifying as a civilian to the incident in this case and was not on duty at that time or involved in the investigation. (*See id.* at 112, 115, 117-18).

Officer Minor testified that after he gave his statement to police, he was shown a photograph of L.M. (*See id.* at 152-53, 156). Neither defense counsel nor the Commonwealth were aware of this identification and the trial court immediately excused the jury from the courtroom to allow for questioning as to its circumstances. (*See id.* at 155-56). Minor explained that he did not remember who showed him the photograph or exactly what it looked like, but recalled that it was a facial photograph and that he immediately recognized L.M. as the shooter. (*See id.* at 146-47, 156-159).

After a brief inquiry, the Commonwealth was able to identify the police officer who may have shown the photograph to Officer Minor. (**See id.** at 162-63). Defense counsel moved for a mistrial and the trial court dismissed the jury for the afternoon, granting counsel time to interview any police officers or witnesses regarding the photograph identification. (**See id.** at 163-65). After defense counsel interviewed several officers and witnesses, placed her findings on the record and discussed the issue with L.M. and his father, L.M. and counsel decided to withdraw the request for a mistrial. (**See** N.T. Trial, 3/06/19, at 6-13, 15-25). The trial court repeatedly advised L.M. that it would grant the mistrial if L.M. chose to advance it and thereafter conducted a colloquy regarding his withdrawal of the motion. (**See id.** at 24-25).

On March 8, 2019, the jury found L.M. guilty of the above-mentioned offenses. On May 6, 2019, L.M. filed a *pro se* motion requesting the appointment of new counsel. The public defenders' office filed a petition for the appointment of conflict counsel that the court granted on May 14, 2019.

On May 28, 2019, the trial court sentenced L.M. to an aggregate term of not less than ten nor more than twenty years' incarceration. L.M. did not file a post-sentence motion or direct appeal. Following restoration of his direct appeal rights *nunc pro tunc* through litigation of a PCRA petition,[3] L.M. filed

---

[3] Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.

the instant timely appeal. L.M. and the trial court complied with Rule 1925. **See** Pa.R.A.P. 1925(a)-(b).

**II.**

**A.**

L.M. first argues that the trial court erred in denying the motion for appointment of new counsel he made at the outset of trial. L.M. contends his reasons for opposing the motion for severance of the firearms offense were clear and that he was consistently at odds with counsel's trial strategy.

"The right to counsel is guaranteed by both the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution. . . . These constitutional rights entitle an accused to choose at his own cost and expense any lawyer he may desire." **Commonwealth v. Prysock**, 972 A.2d 539, 542 (Pa. Super. 2009) (citation and internal quotation marks omitted). "However . . . the constitutional right to counsel of one's choice is not absolute." **Id.** (citation omitted). Rather, the right of an accused individual to choose his own counsel must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice. **See Commonwealth v. Lucarelli**, 971 A.2d 1173, 1178 (Pa. 2009).

A trial court's decision as to whether to grant a defendant's petition to replace court-appointed counsel is left to its sound discretion. **See Commonwealth v. Weimer**, 167 A.3d 78, 89 (Pa. Super. 2017). "As a

general rule, however, a defendant must show irreconcilable differences between himself and his court appointed counsel before a trial court will be reversed for abuse of discretion in refusing to appoint new counsel." *Id.* (citation omitted). Our courts have held that the appointment of new counsel is not warranted where the defendant merely has a strained relationship with counsel, a difference of opinion in trial strategy or lacks confidence in counsel's ability. *See id.*

In this case, L.M. requested the appointment of new counsel because he disagreed with her decision to seek severance of the firearms offense. (*See* N.T. Trial, 3/04/19, at 8). As mentioned previously, counsel sought severance of this charge because its inclusion at trial would lead to admission of L.M.'s prior felony convictions. (*See id.* at 10-11). Despite L.M.'s knowledge of this reasoning, he insisted that he wanted one trial only. (*See id.* at 8-10).

The trial court advised that it had never had an attorney request only one trial under these circumstances because of the significant potential for prejudice. (*See id.* at 11-12). The court explained its concern that the jury would not be as open minded after hearing about L.M.'s prior record and could find him guilty of the most serious charges in the instant case, including attempted homicide, based on that record. (*See id.* at 10-13). The court denied L.M.'s request for appointment of new counsel, stating that it "[had] no reason to quarrel with [present counsel's] tactical decision to ask for

severance, and indeed, would be concerned about what would happen to [L.M.] if [the court] did try these cases together." (***Id.*** at 13).

We agree with the trial court's assessment that L.M. failed to establish an irreconcilable difference with trial counsel warranting appointment of new counsel where his disagreement with her trial strategy was patently unreasonable. Instead, counsel's tactical decision to sever the firearms offense demonstrated her effective representation of L.M, especially in light of the serious charges he faced, including attempted homicide. L.M.'s first issue merits no relief.[4]

**B.**

L.M. contends that the trial court erred in allowing Officer Minor to testify at trial in full police uniform when he was merely a lay witness to the incident. L.M. maintains that Officer Minor's uniform unfairly bolstered his credibility with the jury and was prejudicial to his case.

Preliminarily, we note that we review a trial court's evidentiary decisions for an abuse of discretion. ***See Commonwealth v. DiStefano***, 236 A.3d 93, 98 (Pa. Super. 2020). Additionally, it is well established that a jury is

---

[4] With regard to L.M.'s claim that counsel continued to make decisions adverse to his interests throughout trial, any allegations of ineffective assistance of counsel are not cognizable on direct appeal and must be deferred to collateral review under the PCRA. ***See Commonwealth v. Rosenthal***, 233 A.3d 880, 886 (Pa. Super. 2020).

presumed to follow the trial court's instructions. ***See Commonwealth v. Travaglia***, 28 A.3d 868, 882 (Pa. 2011).

Officer Minor testified in uniform because he was on duty on the day of trial and returning to work immediately after his testimony. The trial court instructed the jury regarding Officer Minor's uniform as it related to his credibility as follows:

> Members of the jury, I want to advise you that this witness was not involved in the investigation of this case. He is testifying as a civilian witness, so he should be given no special status because he is in uniform here today.
>
> As we've discussed earlier, the testimony of all witnesses should be evaluated in the same way and when I give you my concluding instructions I will discuss with you the factors you are to consider when judging credibility of witnesses.

(N.T. Trial, 3/05/19, at 117). Neither the Commonwealth nor defense counsel augmented this instruction after the court gave them the opportunity to do so. (***See id.***).

The trial court's instruction plainly directed the jury that it could not consider Officer Minor's uniform in assessing his credibility; the jury is presumed to have followed this instruction. Further, we agree with the trial court that because Officer Minor was employed by the Philadelphia Police Department at the time of L.M.'s trial and the jury heard background testimony concerning his employment, permitting him to testify in uniform was not prejudicial and the curative instruction corrected any possible

prejudice. (**See** Trial Court Opinion, 8/11/20, at 15; **see also** N.T. Trial, 3/05/19, at 118-19).[5] L.M. is not entitled to relief on this claim.

## C.

L.M. next argues that the trial court erred in admitting into evidence the shell casing found by a witness at the scene of the shooting, given that the Commonwealth failed to connect it to him through DNA, fingerprint or other evidence. L.M. asserts that because the casing had no relevance or probative value, it was inadmissible.

First, we agree with the trial court and the Commonwealth that this issue is waived. "It is well settled in Pennsylvania that a party must make a timely and specific objection at trial in order to preserve an issue for appellate review." **Commonwealth v. Marrero**, 217 A.3d 888, 890 (Pa. Super. 2019), *appeal denied*, 226 A.3d 968 (Pa. 2020); **see also** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

---

[5] L.M acknowledges that there is no Pennsylvania authority supporting his argument and relies instead on a non-binding United States Court of Appeals Second Circuit decision from 1981, **LaRocca v. Gold**, 662 F.2d 144 (2d Cir. 1981). **LaRocca** is factually and legally inapposite to the instant case, as it involved an ordained Catholic priest and practicing attorney who brought a civil rights action seeking declaratory relief permitting him to wear his Roman Catholic collar when appearing before a jury as a defense lawyer in a criminal trial. The case at bar is readily distinguishable in that it involves a police officer testifying as a lay witness to a shooting who was unable to appear in street clothes because of logistical reasons. **LaRocca** has no bearing on this case.

In this case, the trial court admitted the shell casing into evidence during Corporal Callahan's testimony without objection by the defense, even when specifically queried by the court. (*See* N.T. Trial, 3/06/19, at 203).

Moreover, even if this claim challenging the admission of the shell casing were not waived, any error was harmless. Harmless error exists if "the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence." *Commonwealth v. Jones*, 240 A.3d 881, 892 (Pa. 2020) (citation omitted) (outlining three discrete circumstances under which harmless error can be established).

Here, the trial court found:

> The shell casing did not prove anything other than that [R.P.] was shot, which was proven by his doctor's expert testimony and uncontested. Additionally, as [L.M.] himself argues in his Statement of Errors, no gun was recovered in this matter from [him] that would connect [him] to the shell casing. The shell casing was not sent out for either DNA or fingerprint testing, because, as Detective [Stephen] Reeves explained in his testimony, the gasses released from a gun evaporate any kind of DNA and/or fingerprints that would be left behind on a shell casing. Indeed, the shell casing was not linked to [L.M.] in any way. The shell casing was merely cumulative, and there is no reasonable possibility that the admission of the shell casing itself moved the jury toward conviction of [L.M.].

(Trial Ct. Op., at 16) (record citations omitted).

It is abundantly clear from the record that R.P. was shot with a firearm in the lower back, as established through eyewitness testimony and physical evidence of the bullet extracted during surgery from his right thigh.

Therefore, we agree with the trial court that evidence of the shell casing found in the hallway was merely cumulative and did not impact the verdict. This issue is meritless, even if it were not waived.

**D.**

Finally, L.M. claims that the trial court erred in failing to grant a mistrial *sua sponte* for reasons of manifest necessity, given that his right to a fair trial was jeopardized. L.M. maintains that a mistrial was warranted even without his consent because of Officer Minor's testimony relating to the photograph identification.

"It is within a trial judge's discretion to declare a mistrial *sua sponte* upon the showing of manifest necessity, and absent an abuse of that discretion, we will not disturb his or her decision." ***Commonwealth v. Cornelius***, 180 A.3d 1256, 1262 (Pa. Super. 2018) (citation omitted). "A mistrial should be declared *sua sponte* only in very **extraordinary and striking** circumstances." ***Id.*** (citation omitted; emphasis added).

The record demonstrates that following Officer Minor's testimony describing the photograph identification, the trial court afforded defense counsel ample opportunity to examine the circumstances and openly told L.M that it would grant a mistrial if he pursued the motion. Counsel conducted several interviews to investigate any ramifications and placed her findings on the record. (***See*** N.T. Trial, 3/06/19, at 7-11). Counsel also discussed with L.M. and his father whether pursual of a mistrial was the best course of action

and they concluded that it was not. (*See id.* at 24). Additionally, the trial court colloqued L.M. regarding withdrawal of the motion, as follows:

> **The Court**: Has anybody threatened you or forced you to do this today?
>
> **The Defendant**: No, ma'am.
>
> **The Court**: Are you under the influence of alcohol or drugs?
>
> **The Defendant**: No, ma'am.
>
> **The Court**: Are you taking medications of any kind?
>
> **The Defendant**: No, ma'am.

(*Id.* at 25).

Thus, the record reflects that L.M. and his attorney carefully considered whether a mistrial was in his best interests after thorough investigation and decided to go forward with trial. L.M. has failed to establish that the court should have disregarded his express wish to proceed with trial by declaring a mistrial *sua sponte* and has fallen far short of showing that extraordinary or striking circumstances were present to necessitate such action. Thus, the trial court did not err in not declaring a mistrial.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/28/21</u>