**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 7 WAP 2021 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered July 29, |
| | : | 2020 at No. 1873 WDA 2019, |
| v. | : | reversing the Order of the Court of |
| | : | Common Pleas of Indiana County |
| | : | entered November 14, 2019 at No. |
| BRADY COLLIN DISTEFANO, | : | CP-32-CR-0000416-2017 and |
| | : | remanding. |
| Appellant | : | |
| | : | SUBMITTED: October 25, 2021 |

## OPINION

**CHIEF JUSTICE BAER**                    **DECIDED: DECEMBER 22, 2021**

In February of 2017, Caleb Zweig ("Zweig") died after a brief but tragic interaction with his college fraternity brother, Brady DiStefano ("Appellant"). Appellant initially was charged with aggravated assault and criminal homicide due to this encounter; however, the criminal homicide charge later was dismissed as the Commonwealth failed to produce *prima facie* evidence to support it. In response to Appellant's subsequent pretrial motion, the trial court entered an order precluding the Commonwealth from presenting at Appellant's trial any evidence suggesting that Appellant caused Zweig's death. The Commonwealth appealed that order to the Superior Court, which reversed the trial court's order.

This Court granted allowance of appeal to determine whether the Superior Court misapplied the appellate court standard for reviewing trial court evidentiary rulings. After

careful consideration, we respectfully conclude that the Superior Court misapplied the relevant standard of review in reversing the trial court's order. Thus, for the reasons that follow, we vacate the Superior Court's judgment, reinstate the trial court's order, and remand for further proceedings consistent with this Opinion.

## I.    Background

In February of 2017, the Commonwealth charged Appellant with criminal homicide and aggravated assault in connection with the death of Zweig. On April 26, 2017, a magisterial district judge ("MDJ") presided over Appellant's preliminary hearing. The first witness to testify at that hearing was Trevor King ("King"). King testified, in relevant part, as follows.

King, Zweig, and Appellant were students at Indiana University of Pennsylvania and fraternity brothers. At approximately 10:00 p.m. on February 3, 2017, King arrived at an off-campus party. About 45 minutes later, Zweig informed King that Appellant was intoxicated and needed to be taken home. Shortly thereafter, the three fraternity brothers left the party and headed toward the residences of Zweig and Appellant. According to King, both Zweig and Appellant were intoxicated; however, Zweig "was not nearly as bad" as Appellant. N.T., 4/26/2017, at 7.

King stated that he walked slightly in front of Zweig and Appellant, when he heard the two "bickering a little bit but nothing out of the ordinary." *Id.* at 6. At that point, King turned around and observed Zweig and Appellant facing each other with their chests puffed out as they began "poking each other." *Id.* at 7-8. King told the two men to stop, turned around, and began to walk again. A few seconds later, King heard what he described as a "scuffle," which caused him to turn around again. *Id.* at 8.

King testified that, when he turned around, he saw Zweig on his back on the pavement. Appellant was on his knees with his back toward King, while kneeling over

Zweig. King stated that Appellant's hands were on Zweig's "chest area," though King was not entirely sure where Appellant placed his hands because he "didn't really see." *Id.* King noted that Appellant could not have had his hands on Zweig for more than 5 or 6 seconds. *Id.* at 31. King then pulled Appellant off Zweig, separating the two.

According to King, several persons assisted him with moving Zweig to a nearby grass area. Zweig was unconscious and breathing with "weird noises coming from his throat." *Id.* at 9. Shortly after they moved Zweig, someone called 911, and an ambulance arrived a few minutes later. At some point, Appellant left the scene, and after the ambulance arrived, King went back to the house from which the three had left earlier, where he found Appellant. King noticed that Appellant had a scratch on his face and then escorted Appellant to his residence. The next morning, King was informed by a friend that Zweig had died over night.

The next witness to testify at the preliminary hearing was Ashley Zezulak, M.D. ("Dr. Zezulak"), the forensic pathologist who performed Zweig's autopsy. Dr. Zezulak testified that she discovered a "scalp hemorrhage" on Zweig's head that was not large enough to have been the cause of his death. *Id.* at 52. Indeed, the doctor stated that her examination of Zweig uncovered nothing remarkable. *Id.* at 50. Dr. Zezulak explained that she found no physical signs that Zweig had been choked or suffered chest compression. *Id.* at 52. Notwithstanding this lack of physical evidence, the doctor expressed an uncertain opinion that Zweig died of "[a]sphyxiation, secondary to presumed chokehold and chest compression." *Id.* Dr. Zezulak stated that her opinion was uncertain because it arose from the investigation into Zweig's death, not from anything that she discovered during the autopsy. In fact, the doctor remarked that she "didn't find any significant anatomical findings during the autopsy." *Id.* at 51. Thus, the

doctor conceded that her cause-of-death determination was not based upon the autopsy but, rather, "solely on what investigators told [her.]"[1]  *Id.* at 57.

The MDJ concluded that the Commonwealth presented a *prima facie* case for both aggravated assault and criminal homicide.  Appellant subsequently filed an omnibus pretrial motion, which included a petition for a writ of *habeas corpus*.  As to that petition, Appellant asserted that the "evidence at the preliminary hearing did not suffice to state a *prima facie* case against [Appellant.]"  Omnibus Pretrial Motion, 9/1/2017, at ¶5.  The trial court agreed with Appellant, and on November 13, 2017, the court entered an order dismissing both of Appellant's charges.  The Commonwealth appealed the trial court's order to the Superior Court, which affirmed in part, reversed in part, and remanded for further proceedings.  *Commonwealth v. DiStefano*, 2018 WL 5076959 (Pa. Super. filed 10/18/2018) (unpublished memorandum) ("*DiStefano I*").  Specifically, the Superior Court held that the trial court correctly concluded that the Commonwealth failed to present sufficient evidence to establish a *prima facie* case of criminal homicide against Appellant but that the court erred in finding that the Commonwealth failed to present a *prima facie* case of aggravated assault against Appellant.

On remand, Appellant filed a motion *in limine*.  In pertinent part, Appellant asked the trial court to preclude the Commonwealth from presenting at his trial any evidence regarding Zweig's death.  In making this request, Appellant highlighted that the homicide charge had been dismissed, rendering Zweig's death irrelevant to the prosecution of the aggravated assault charge.  Appellant further submitted that, to the extent that evidence of Zweig's death is somehow relevant to the aggravated assault charge, "its probative value is outweighed by the danger of one or more of [the following:]  unfair prejudice,

---

[1] The final witness to testify at the preliminary hearing was John Eric Sherf ("Detective Sherf"), a detective with the Indiana Borough Police Department.  Detective Sherf's testimony is irrelevant to the instant appeal.

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Motion *In Limine*, 8/22/2019, at ¶8.

The trial court reserved ruling on this issue, causing Appellant to renew his motion *in limine* on November 8, 2019. On November 14, 2019, the trial court entered an order granting in part and denying in part Appellant's motion. The court stated that it would permit the Commonwealth to present evidence that Zweig is deceased "to explain to the jury his absence at trial and why the expert testimony from a forensic pathologist is being presented." Trial Court Order, 11/14/2019, at ¶3. However, the court ruled that, because it dismissed the criminal homicide charge, "no evidence shall be permitted to prove that [Appellant] caused [Zweig's] death." *Id.*

Later, the trial court authored an opinion elaborating on the rationale underlying its November 14th order. Trial Court Opinion, 2/4/2020. In so doing, the court observed that, after the criminal homicide charge was dismissed, the prosecution did not present any additional evidence supporting a causal connection between Appellant's actions and Zweig's death. *Id.* at 4. Concerning the relevance of evidence relating to Zweig's death, the court reiterated that it is probative insomuch as the evidence explains why Zweig will not be present at trial and why the expert testimony is from a forensic pathologist. In the court's view, the probative value of this narrow type of evidence outweighed prejudice to Appellant, and therefore, the evidence is admissible for this purpose. *Id.* at 4-5.

Regarding the admissibility of evidence as to the cause of Zweig's death, the court submitted that any probative value of this evidence was outweighed by unfair prejudice to Appellant. *Id.* at 5. The court highlighted that, in her preliminary hearing testimony, Dr. Zezulak was unable to state definitively how Zweig died, and she specifically testified that she found no physical evidence of trauma that would have been fatal to Zweig. The court opined that this reality, "along with other testimony, failed to establish that

[Appellant] caused Zweig's death, and led to the dismissal of the criminal homicide charges." *Id.* Thus, in the court's view, "it would be highly prejudicial to [Appellant] to allow the Commonwealth to suggest that his actions in any way caused Zweig's death[.]" *Id.*

## II. Superior Court Opinion

The Commonwealth yet again appealed to the Superior Court, this time arguing that the trial court abused its discretion in finding any evidence concerning the causation of the Zweig's death to be irrelevant and unduly prejudicial. The Superior Court agreed with the Commonwealth, reversed the trial court's order, and remanded for further proceedings. *Commonwealth v. DiStefano*, 236 A.3d 93 (Pa. Super. 2020) ("*DiStefano II*").

In reaching this result, the Superior Court noted that the Commonwealth will be attempting to prosecute Appellant for aggravated assault under Subsection 2702(a)(1) of the Crimes Code, which provides, "A person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). The court also observed that the Crimes Code defines "Serious bodily injury" as "[b]odily injury which ***creates a substantial risk of death*** or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *DiStefano II*, 236 A.3d at 99-100 (emphasis in original) (quoting 18 Pa.C.S. § 2301). The court also emphasized that it has previously held that, to prove that a defendant committed aggravated assault, the Commonwealth must demonstrate that the defendant acted recklessly by presenting evidence that the defendant performed the offensive act "under circumstances which

almost assure that injury or death will ensue." *Id.* at 100 (quoting *Commonwealth v. Patrick*, 933 A.2d 1043, 1046 (Pa.Super. 2007) (*en banc*)).

Based upon its understanding of the law, the Superior Court agreed with the Commonwealth that evidence related to the causation of the Zweig's death is relevant to allow the factfinder to determine whether Appellant: "(1) caused [Zweig] serious bodily injury that created a 'substantial risk of death;' and (2) acted with recklessness in that his assault of [Zweig] was 'performed under circumstances which almost assure[d] that injury or death [would] ensue.'" *Id.* (citations omitted). The Superior Court then purported to disagree with the trial court's finding that it would be "highly prejudicial" to Appellant to permit Dr. Zezulak to offer an expert opinion on the cause of the Zweig's death. In this regard, the intermediate court stated that the courts of this Commonwealth "have reasoned that expert testimony is not rendered inadmissible simply because the expert's data or examination results are inconclusive." *Id.* (citing, *inter alia*, *Commonwealth v. Minerd*, 753 A.2d 225 (Pa. 2000)).

The court ultimately concluded that Dr. Zezulak's opinion as to the cause of Zweig's death is admissible at Appellant's trial. The court explained that the jury will be charged with weighing that evidence, as well as King's testimony regarding his observations of the interaction between Appellant and Zweig. Because the Superior Court believed that the trial court abused its discretion in this regard, it reversed the trial court's order granting in part Appellant's motion *in limine* and remanded for further proceedings.

### III. Issue on Appeal

Appellant petitioned this Court for allowance of appeal, which we granted to consider the following question, as phrased by Appellant:

Did the Superior Court err in reversing the order entered November 14, 2019, by departing from [the] standard of review for the admission or

exclusion of evidence and so conflicted with binding precedent inasmuch as the Superior Court engaged in a *de novo* examination of the challenged evidence rather than reviewing the [t]rial [c]ourt's exercise of discretion?

*Commonwealth v. DiStefano*, 249 A.3d 504 (Pa. 2021).[2]

## IV. Parties' Arguments

## A. Appellant's Argument

Appellant reminds this Court that evidentiary rulings are committed to the sound discretion of the trial court and that appellate courts should not review these decisions *de novo*. Appellant highlights this Court's well-settled standards for appellate review of evidentiary decisions. In particular, the complaining party has a heavy burden to prove that a trial court's evidentiary decision was made in error; "it is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first instance, charged with the duty imposed below[.]" Appellant's Brief at 18 (quoting *Paden v. Baker Concrete Construction*, 658 A.2d 341, 343 (Pa. 1995)). Indeed, Appellant reiterates the oft-quoted legal principle that an "abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Id.*

The crux of Appellant's argument to this Court is that the Superior Court failed to apply dutifully its standard of review. Rather, Appellant contends, the Superior Court erroneously substituted its judgment for that of the trial court by ruling *de novo* on his motion *in limine*. As evidence of this contention, Appellant observes, *inter alia*, that the

---

[2] "Whether the Superior Court properly applied the 'abuse of discretion' standard of review presents this Court with a question of law. Accordingly, our scope of review is plenary, and our standard of review is *de novo*." *Commonwealth v. Gill*, 206 A.3d 459, 466 n.6 (Pa. 2019).

Superior Court merely concluded "that the lower court abused its discretion in excluding evidence related to the causation of [Zweig's] death." *DiStefano II*, 236 A.3d at 101. Appellant submits that the Superior Court did not specify how the trial court abused its discretion, evincing the fact that the intermediate court paid lip service to its standard of review.

According to Appellant, the trial court carefully examined the relevancy of evidence that Appellant caused Zweig's death and reasonably concluded that any probative value of such evidence was outweighed by the unfair prejudice it would cause Appellant. In Appellant's view, had the Superior Court applied the appropriate standard of review, it would have properly determined that the trial court did not abuse its discretion.[3] For these reasons, Appellant asks the Court to reinstate the trial court's order granting in part his motion *in limine*.

## B. Commonwealth's Argument

Contrary to Appellant's position, the Commonwealth insists that the Superior Court correctly described and applied the appellate court standard for reviewing evidentiary rulings. The Commonwealth suggests that the Superior Court supported its conclusion (*i.e.*, that the trial court abused its discretion by precluding evidence that Appellant caused Zweig's death,) by evaluating the trial court's relevancy analysis. In the Commonwealth's opinion, the Superior Court thoroughly demonstrated how the trial court misapplied the law in deciding to exclude evidence regarding the cause of Zweig's death. Thus, the Commonwealth maintains that the Superior Court did not, as Appellant suggests, merely substitute its judgment for that of the trial court.

---

[3] Appellant dedicates a portion of his brief to arguing that the Superior Court failed to adhere to the law-of-the-case doctrine. We, however, did not grant allowance of appeal to address that doctrine.

Indeed, the "Commonwealth vehemently submits that the Superior Court did **not** engage in *de novo* review of evidence by simply disagreeing with the conclusion of the trial court[.]" Commonwealth's Brief at 17 (emphasis in original). Rather, the Commonwealth contends, the Superior Court provided a "thorough analysis of the relevancy, probative value, and possible prejudicial nature of such evidence and how [the] evidence relates to 18 Pa.C.S.A. 2702(a)(1) and 18 Pa.C.S.A. 2301." *Id.*

Next, the Commonwealth presents a lengthy argument regarding the merits of Appellant's motion *in limine*. The Commonwealth's argument substantially mirrors the rationale that the Superior Court employed in reversing the trial court's order. Referencing the statutory definitions of "aggravated assault" and "serious bodily injury," the Commonwealth argues that it must present to the jury evidence that Appellant engaged in conduct or actions that caused a bodily injury to Zweig that not only created a substantial risk of death but, in fact, caused Zweig's death. Stated succinctly, the Commonwealth believes that the Superior Court correctly reversed the trial court's order because evidence that Appellant caused Zweig's death is relevant to prove him guilty of aggravated assault and because that evidence does not unfairly prejudice Appellant.

## V. Analysis

It is well settled that evidentiary rulings are within the sound discretion of trial courts. *See*, *e.g.*, *Commonwealth v. Laird*, 988 A.2d 618, 636 (Pa. 2010) (explaining that "the decision to admit or exclude evidence is committed to the trial court's sound discretion"). Accordingly, when a party adverse to a trial court's evidentiary ruling seeks appellate review of that determination, that party carries a heavy burden to demonstrate that the trial court abused its discretion. *Commonwealth v. Norton*, 201 A.3d 112, 120 (Pa. 2019). "An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court;

rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary power." *Id.*

"Regarding the 'abuse of discretion' standard of review, this Court has explained that the term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the [trial] judge." *Commonwealth v. Gill*, 206 A.3d 459, 466 (Pa. 2019) (internal quotation marks and citation omitted). "Absent an abuse of that discretion, an appellate court should not disturb a trial court's discretionary ruling." *Id.* "An appellate court will not find an abuse of discretion based on a mere error of judgment, but rather . . . where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.* at 466-67.

"Importantly, an appellate court should not find that a trial court abused its discretion merely because the appellate court disagrees with the trial court's conclusion." *Id.* at 467. "Indeed, when reviewing the trial court's exercise of discretion, it is improper for an appellate court to 'step[ ] into the shoes' of the trial judge and review the evidence *de novo.*" *Id.* (internal quotation marks omitted). In other words, an appellate court may not disturb a trial court's discretionary ruling by substituting its own judgment for that of the trial court." *Id.* (internal quotation marks omitted).

Here, the trial court exercised its discretion and ruled that the probative value of evidence suggesting that Appellant caused Zweig's death was outweighed by unfair prejudice to Appellant. As noted above, the court supported its decision by highlighting that, in her preliminary hearing testimony, Dr. Zezulak was unable to state definitively how Zweig died, and she explicitly stated that she found no physical evidence of trauma that would have been fatal to Zweig. The court also noted that the Commonwealth failed to

produce any other evidence that demonstrated that Appellant's actions were the actual cause of Zweig's death.

On appeal, the Superior Court noted that it reviews evidentiary rulings for an abuse of discretion, *DiStefano II*, 236 A.3d at 98, and ultimately concluded that the trial court abused its discretion, *id.* at 101. However, the Superior Court never described the particulars of the "abuse of discretion" standard nor did the intermediate court specifically explain how the trial court abused its discretion. Instead, the Superior Court stated its disagreement with "the trial court's finding that it would be highly prejudicial to the defense to allow Dr. Zezulak to offer an expert opinion on causation of the victim's death." *Id.* at 100.

Respectfully, as an initial matter, the Superior Court mischaracterized the trial court's ultimate ruling. At one point in its opinion, the trial court did state that "it would be highly prejudicial to [Appellant] to allow the Commonwealth to suggest that his actions in any way caused Zweig's death[.]" Trial Court Opinion, 2/4/2020, at 5. However, the trial court explicitly held that it would not permit the admission of any evidence that Appellant caused Zweig's death because "any probative value [of the evidence] was outweighed by unfair prejudice." Trial Court Opinion, 2/4/2020, at 5. In other words, the trial court's ruling closely tracked Pennsylvania Rule of Evidence 403, which provides that a trial court "may exclude relevant evidence if its probative value is outweighed by a danger of[, *inter alia*,] unfair prejudice[.]" Pa.R.E. 403.

The Superior Court never directly addressed whether this determination constituted an abuse of discretion. Instead, as noted, the court disagreed with the concept that Dr. Zezulak's testimony concerning Zweig's cause of death is not "highly prejudicial" to Appellant. This disagreement misses the mark of addressing the trial court's actual conclusion, and it simply is not supported by the record, which clarifies that,

while Dr. Zezulak would testify that Appellant caused Zweig's death by strangling or otherwise asphyxiating him, this testimony would be premised entirely upon what the investigators told the doctor. The record further reflects, as detailed *supra*, that Dr. Zezulak also would testify that she found no physical signs to support this conclusion.

As the Superior Court concluded in *DeStefano I*, the dubious nature of this evidence led to the dismissal of the criminal homicide charges lodged against Appellant. *DiStefano I*, 2018 WL 5076959, at *7. We simply fail to see how the Superior Court reached the conclusion that this questionable testimony will not be "highly prejudicial" to Appellant, especially when he is not being tried for homicide. Indeed, it is difficult to contemplate a type of evidence that would be more prejudicial to a criminal defendant than evidence that he caused the death of the alleged victim of aggravated assault for which he stands trial.

Thus, after a review of the record, the lower courts' opinions and the parties' briefs, we conclude that the Superior Court did not properly apply the "abuse of discretion" standard. In reaching this conclusion, we observe that it is unclear from the Superior Court's opinion whether the intermediate court reviewed the trial court's actual holding to determine whether the trial court's evidentiary ruling was the product of a misapplication of the law or whether the trial court's judgment was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Further, as we discuss in detail *supra*, we find that the proper application of the "abuse of discretion" standard of review leads us to vacate the Superior Court's judgment and to reinstate the trial court's order.

As we noted above, Pennsylvania Rule of Evidence 403 allows a trial court, in its discretion, to exclude relevant evidence if its probative value is outweighed by a danger of unfair prejudice to the defendant. Pa.R.E. 403. The trial court dutifully applied this rule, knowing full well the charge that Appellant faced, aggravated assault, and the charge

that Appellant no longer faced, criminal homicide, due to insufficient evidence. Referencing the record as it currently exists, the trial court observed that the Commonwealth failed to present any evidence, save for Dr. Zezulak's tenuous testimony, supporting a causal connection between Appellant's actions and Zweig's death. With these circumstances in mind, the court weighed the probative value of the causation evidence against the danger of the evidence creating unfair prejudice to Appellant, and concluded that the unfair prejudice of the evidence outweighed its probative value.

Because the trial court properly applied Rule 403, its evidentiary ruling was not the product of a misapplication of the law. Further, the court's view was not manifestly unreasonable; indeed, it was reasonable under the circumstances presented. Lastly, there is nothing in the certified record or the trial court's opinion that would suggest that the court's ruling was the result of partiality, prejudice, or ill-will. Consequently, we conclude that the trial court did not abuse its discretion by holding that the Commonwealth cannot present any evidence at trial which suggests that Appellant caused Zweig's death.

## VI. Conclusion

A fundamental tenet of our judicial system is that trial courts are empowered with the sound discretion to make difficult decisions regarding the admission and exclusion of evidence at trials. While this power certainly is not absolute, our appellate courts must adhere to the principle that they cannot interfere with these discretionary decisions unless an abuse of discretion occurs. In applying this principle, the appellate courts should remain mindful that they do not address these evidentiary issues *de novo* and they may not substitute their judgment for that of trial courts.

In the instant matter, the Superior Court misapplied the "abuse of discretion" standard of review, as detailed above. In addition, our application of that standard demonstrates that the trial court reasonably exercised its discretion by excluding from trial

any evidence that Appellant caused Zweig's death.  For these reasons, we vacate the Superior Court's judgment, reinstate the trial court's order, and remand to the trial court for proceedings consistent with this Opinion.

Justices Saylor, Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.