**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Arthur WILLIAMS, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 13, 2004.

Filed Jan. 19, 2005.

Reargument Denied March 18, 2005.

Francis T. Chardo, Asst. Dist. Atty., Harrisburg, for Com., appellant.

John R. Schneidermann, Harrisburg, for appellee (no brief filed).

BEFORE: FORD ELLIOTT, JOYCE, and BECK, JJ.

OPINION BY JOYCE, J.:

¶ 1 The Commonwealth of Pennsylvania (Commonwealth) appeals the judgment of sentence imposed December 16, 2003, in

the Dauphin County Court of Common Pleas against Arthur Williams (Appellee) on the basis that said sentence was illegal. Upon review, we affirm the judgment of sentence. The relevant facts and procedural history of this matter were set forth by the trial court as follows:

On December 16, 2003, [Appellee] pled guilty to theft by unlawful taking and criminal conspiracy. These charges arose when [Appellee] and a friend took a bench valued at approximately $100 during a drunken episode [that occurred August 5, 2003]. At the time of sentencing, [Appellee] was 43 years old, married and had been employed full time. [Appellee] had already served one month in the Dauphin County Prison. Following the plea, [Appellee] waived his right to a presentence investigation, and we proceeded directly to the sentencing hearing. As [Appellee] had already served one month in jail, defense counsel advised the court that the Commonwealth had agreed to a probationary sentence. (N.T. Guilty Plea 4).

Under the Pennsylvania Sentencing Guidelines, the standard minimum range sentence for the [sic] each of the crimes charged and pled to, considering the [Appellee]'s prior record score of five, was 1 to 9 months. 42 Pa.C.S.A. § 9721 (204 Pa.Code § 303.16). [The trial court] sentenced him [on] the theft charge to a standard range sentence of 24 months' intermediate punishment, the first six months restrictive in the nature of intensive supervision and drug and alcohol treatment since it was apparent

that alcohol was a prominent factor in [Appellee]'s criminal behavior problems.[1] On the conspiracy charge, [the trial court] sentenced him to the same concurrent sentence. The six month restrictive intermediate punishment was more than the proffered probationary sentence but within the standard minimum range sentence under the Pennsylvania Sentencing Guidelines. *Id.*

On December 18, 2003, the Commonwealth filed its motion to correct the sentence arguing that the [Appellee] was ineligible for a county intermediate punishment sentence due to his prior 1986 convictions for indecent assault and robbery. In addition, the Commonwealth noted other convictions in 1985 for simple assault, 1986 for unlawful restraint and simple assault, 1988 for simple assault and 1997 for terroristic threats. The Commonwealth now claims this history qualifies as a past pattern of violent behavior, rendering [Appellee] ineligible for an intermediate punishment sentence. [The trial court] thereafter vacated [Appellee]'s sentence pending a hearing on this issue. Following the hearing, [the trial court] took under advisement the matter of [Appellee]'s eligibility for an intermediate punishment sentence.

Trial Court Opinion, 04/16/2004, at 1–2 (footnotes in original).

¶ 2 Subsequent to the hearing, the trial court re-imposed the same sentences. The Commonwealth then filed the instant appeal alleging that the sentences imposed were illegal. Specifically, the Common-

---

1. In 2003, "intensive supervision" was an approved type of restrictive intermediate punishment in Dauphin County. Additional conditions included in [Appellee]'s sentence were that he pay his fees, fines and costs, submit to regular rules of probation, maintain full-time employment, have his TASC (D & A) evaluation updated within 24 hours, attend no less

than two AA/NA meetings per week and then, obtain an AA/NA sponsor (maintain no less than weekly contact), attend an STD class, refrain from alcohol, and attend drug and alcohol treatment as directed. [Appellee] admitted at the sentencing hearing to an alcohol problem and was attending AA meetings. (N.T. Guilty Plea 5).

wealth alleges that the sentences of intermediate punishment were illegal under the County Intermediate Punishment Act (42 Pa.C.S.A. § 9801). Brief for the Commonwealth, at 4.

¶ 3 The imposition of sentence is vested within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Commonwealth v. Collins*, 564 Pa. 144, 764 A.2d 1056 (2001). However, the instant case concerns the legality of the sentences imposed, and the determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary. *Id.*

¶ 4 We have thoroughly reviewed the record in this matter, and we find that the legal analysis provided by the esteemed trial court judge, the Honorable Jeanine Turgeon, comprehensively and accurately addresses the issue raised by the Commonwealth. Judge Turgeon's opinion is reproduced in pertinent part below.

### Legal Discussion

A sentencing court must consider statutory guidelines establishing minimum and maximum sentences as well as the Sentencing Guidelines which set forth the recommended standard minimum range sentence, based upon the gradation of the offense (offense gravity score), [Appellee]'s prior criminal record (prior record score) and any aggravating or mitigating factors which may apply. 42 Pa.C.S.A. § 9721 (204 Pa.Code §§ 303.2, 303.9(a), 303.13). The offense gravity score was two for this [Appellee]'s current crimes, theft by unlawful taking (of an item valued between $50 and $200) and conspiracy to commit that crime, both of which are misdemeanors of the second degree and subject to a statutory maximum term of two years

each. *Id.* (204 Pa.Code § 303.15) As noted, his prior record score was five .... indicating restrictive intermediate punishment as an appropriate sentencing alternative, in lieu of imprisonment. *Id.* (204 Pa.Code § 303.16).

\* \* \* \*

The current law for determining [Appellee]'s eligibility for an intermediate punishment sentence is set forth in the County Intermediate Punishment Act (CIPA), 42 Pa.C.S. § 9801 et seq. An "eligible offender" is defined as follows:

Subject to section 9721(a.1) (relating to sentencing generally) [concerning sentences with a mandatory minimum], a person convicted of an offense who would otherwise be sentenced to a county correctional facility, **who does not demonstrate a present or past pattern of violent behavior** and who would otherwise be sentenced to partial confinement pursuant to section 9724 (relating to partial confinement) or total confinement pursuant to section 9725 (relating to total confinement). **The term does not include an offender convicted of any of the following offenses:**

18 Pa.C.S. § 2502 (relating to murder).

18 Pa.C.S. § 2503 (relating to voluntary manslaughter).

18 Pa.C.S. § 2702 (relating to aggravated assault).

18 Pa.C.S. § 2703 (relating to assault by prisoner).

18 Pa.C.S. § 2704 (relating to assault by life prisoner).

18 Pa.C.S. § 2901 (relating to kidnapping).

18 Pa.C.S. § 3121 (relating to rape).

18 Pa.C.S. § 3122.1 (relating to statutory sexual assault).

18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse).

18 Pa.C.S. § 3124.1 (relating to sexual assault).

18 Pa.C.S. § 3125 (relating to aggravated indecent assault).

18 Pa.C.S. § 3126 (relating to indecent assault).

18 Pa.C.S. § 3301 (relating to arson and related offenses).

18 Pa.C.S. § 3502 (relating to burglary) when graded as a felony of the first degree.

18 Pa.C.S. § 3701 (relating to robbery).

18 Pa.C.S. § 3923 (relating to theft by extortion).

18 Pa.C.S. § 4302 (relating to incest).

18 Pa.C.S. § 5121 (relating to escape).

42 Pa.C.S.A. § 9802 (Definitions) (emphasis added).[2]

The Commonwealth argues that [Appellee] is ineligible under Section 9802 for a county intermediate punishment sentence for two separate reasons; first, [Appellee]'s prior convictions in 1986 for indecent assault and robbery are amongst the statutorily enumerated offenses disqualifying him, and second, [Appellee]'s history of criminal convictions reveals a past pattern of violent behavior.

[Appellee] argues that his sentence was proper because the enumerated offenses set forth in Section 9802 disqualify an offender from intermediate punishment consideration only if they are the current offense(s) for which the [Appellee] is being sentenced. In this case, [Appellee]'s current offenses were theft by unlawful taking and conspiracy, neither of which is amongst the enumerated crimes rendering an offender ineligible to receive an intermediate punishment sentence.

Regarding intermediate punishment sentences generally, the Supreme Court recently explained:

Pennsylvania first enacted provisions establishing intermediate punishment as a sentencing alternative in 1990. These provisions were contained in a package of legislation that included the Pennsylvania County Intermediate Punishment Act, directing counties to establish intermediate punishment programs subject to approval by the Pennsylvania Commission on Crime and Delinquency, as well as several amendments to the Sentencing Code .... Intermediate punishment is similar to probation in some respects. Both terms refer, broadly speaking, to a set of measures

---

2. This current version of the CIPA became effective August 21, 2000, at which time the prior version of the CIPA, 61 P.S. § 1101–1114, was repealed. Act 2000–68, June 22, 2000, P.L. 345, No. 41, § 6 (establishing new Act), § 7 (repealing old Act), effective in 60 days. The repealed CIPA, which had been enacted December 19, 1990, included a definition of "eligible offender" substantively identical to the current one. 61 P.S. § 1102 (repealed). A similar, though not identical definition of "eligible offender," had also been enacted in Section 9729 of the Sentenc-ing Code on December 19, 1990, part of the same bundle of legislation that had established the CIPA and made other changes to the Sentencing Code reflecting the creation of intermediate punishment as a sentencing alternative. 42 Pa.C.S.A. § 9729 (repealed). Section 9729 was repealed at the same time as the older CIPA, effective August 21,2000. Act 2000–68, June 22, 2000, P.L. 345, No. 41, § 2. The substance of Section 9729, defining "eligible offender," is now subsumed within the current CIPA, at 42 Pa.C.S.A. § 9802, set forth above.

imposable by the court which restrict an offender's liberty but fall short of traditional incarceration . . . . .

Significantly, however, the General Assembly's intention in adopting intermediate punishment in this Commonwealth was not merely to establish another form of probation parallel to the one that already existed. Rather, as the Superior Court has explained:

The Legislature's intent was: "to give judges another sentencing option which would lie between probation and incarceration with respect to sentencing severity; **to provide a more appropriate form of punishment/treatment for certain types of non-violent offenders**; to make the offender more accountable to the community; and **to help reduce the county jail overcrowding problem** while maintaining public safety." *Commonwealth v. Philipp*, 709 A.2d 920, 921 (Pa.Super.1998) (quoting Sentencing in Pennsylvania 1990: 1990–1991 Annual Report of The Pennsylvania Commission on Sentencing 8). See also 61 P.S. § 1103(3) (reciting that one purpose of a CIPA program is to "fill gaps" in the local correctional systems) [repealed, currently reenacted at 42 Pa.C.S.A. § 9803(3) ]

Indeed, **an offender is not eligible to be considered for intermediate punishment unless the court first determines that probation would be an inadequate response in view of the risk of re-offense, the [Appellee]'s need of correctional treatment**, or the seriousness of the crime . . . . Thus, it is apparent that the Legislature views intermediate punishment as a distinct, and more severe, sanction than traditional probation.

*Commonwealth v. Wegley*, 574 Pa. 190, 829 A.2d 1148, 1152–53 (2003) (footnotes omitted) (emphasis supplied). Based upon the purpose of the act, it seems intermediate punishment was designed for offenders like [Appellee], a 43–year-old, full-time employed, married man, who stole a bench while drunk, admits to an alcohol problem and seeks treatment.

## I. Convictions for Enumerated Offenses as a Basis for Intermediate Punishment Ineligibility

The first issue presented is whether the statutory language, by which persons convicted of the enumerated offenses are ineligible for intermediate punishment, refers to the crimes for which the offender is being currently sentenced or refers to any previous convictions. The "eligible offender" definition language has never specified, in its original form or in its recent reenactment under the CIPA, which is the proper construction. Absent a statement in the statute as to which meaning is intended, the statute is ambiguous on this point and statutory interpretation is warranted. *Commonwealth v. Bavusa*, 574 Pa. 620, 832 A.2d 1042, 1044 n. 2 (2003) (citation omitted). Pursuant to the Statutory Construction Act, "the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." *Id.* at 1049 (citing 1 Pa.C.S. § 1921(a)). "When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute."

*Id.* at 1049–50 (citing 1 Pa.C.S. § 1921(c)).

With regard to the first four considerations listed above, *Wegley* reveals the intent of the CIPA, as originally created, was to provide an intermediate punishment alternative which would address a need: to give judges another sentencing option between probation and incarceration, to provide more appropriate punishment/treatment for certain non-violent offenders, to make the offender more accountable to the community and to help reduce county jail overcrowding while maintaining public safety. *Id.* at 1153. The CIPA's stated purpose reflects these considerations:

§ 1103. Purpose

County intermediate punishment programs shall be developed, implemented and operated for the following purposes:

(1) To protect society and promote efficiency and economy in the delivery of corrections services.

(2) To promote accountability of offenders to their local community.

(3) To fill gaps in local correctional systems and address local needs

through expansion of punishment and services available to the court.

(4) To provide opportunities for offenders who demonstrate special needs to receive services which enhance their ability to become contributing members of the community.

61 P.S. § 1103 (repealed).[3] The limited legislative history of the CIPA (the seventh consideration for determining legislative intent listed above) reflects that relieving prison overcrowding was perhaps a prime catalyst for creating intermediate punishment programs. The legislative history of SB 718, which was later signed into law as Act 193 of 1990 and included the original CIPA, 61 P.S. § 1101–114 (repealed), included the following remarks in the House (prior to final passage of amendments providing for matching funds for counties to implement intermediate punishment programs):

This is a clarifying amendment in order to insure that the intent of the legislation by the county commissioners and the administration, as well as both caucuses, is met in providing for community sanctions for our county prisons to help with the overcrowding situation....

Legis. J.—House at 1881 (Nov. 19, 1990) (comments of Rep. Hagarty).[4] With regard to the remaining considerations in ascertaining legislative intent, we note that neither the fifth nor eighth considerations are applicable here. Finally, with regard to the sixth consideration, determining the consequences of a particular interpretation, we find that the interpretation proposed by [Appellee] is more consistent with the general intent

---

**3.** The current CIPA includes the identical statement of purpose. 42 Pa.C.S.A. § 9803.

**4.** [The trial court took] judicial notice that Dauphin County Prison is and has been overcrowded.

of the CIPA and the purpose behind the creation of intermediate punishment sentencing.

[Appellee]'s interpretation, that an offender is ineligible for intermediate punishment only if being sentenced for one of the crimes listed in Section 9802, is more reasonable than that now proposed by the Commonwealth.[5] Application of the Commonwealth's interpretation would result in an untenable situation where offenders being considered for intermediate punishment are excluded from eligibility even though the same offenders could nevertheless be legally sentenced to mere probation, a less severe form of punishment than intermediate punishment with a restrictive portion (in addition to restorative sanctions). For example, assume a defendant is being sentenced on a simple assault charge and has a prior record score of 0, but who has, in the past, been convicted of indecent assault.[6] Under the Commonwealth's interpretation, this defendant is ineligible for intermediate punishment because of his prior indecent assault conviction, one of the enumerated offenses in Section 9802. However, in that case that defendant would be clearly eligible for probation, which is a recommended standard minimum range sentence under the Sentencing Guidelines. 42 Pa. C.S.A. § 9721 (204 Pa.Code § 303.16 and § 303.9(f)). This court does not believe that the intent of intermediate punishment statute is served when the more severe form of punishment, intermediate punishment, is subject to more stringent eligibility requirements than the lesser form of punishment, probation.[7] "[W]here a statute is fairly susceptible of two different constructions the court may properly consider the injustice, unreasonableness and inconvenience that would follow one of the constructions contended for." *Bavusa,* at 1050 (citation omitted).

At first blush, the Commonwealth's interpretation of the eligible offender definition may seem reasonable. For instance, why list crimes such as murder, voluntary manslaughter or rape, as current convictions for ineligibility when intermediate punishment is not a sentencing option for any of those crimes under the current Pennsylvania Sentencing Guidelines? 42 Pa.C.S.A. § 9721 (204 Pa.Code § 303.11 (Sentencing Levels), § 303.16 (Basic Sentencing Matrix)). At the time "eligible offender" was first defined in 1990 in the previous version of the CIPA, as well as in the Sentencing Code,[8] the Pennsylvania Commission on Sentencing had not yet developed sentencing levels and corresponding sentencing options by which crimes such as murder, voluntary manslaughter and rape, were specifically deemed ineligible for intermediate punishment. The current sentencing levels did not, in fact, come into existence until August 12, 1994 (4th Edition Guidelines).

---

**5.** Footnote # 5 omitted.

**6.** Indecent assault, which is a misdemeanor, carries a prior record score of zero. A defendant must have at least two misdemeanor convictions before a prior record score [a]ffects the standard guideline sentence. 42 Pa. C.S.A. § 9721 (204 Pa.Code § 303.7(a)(5)).

**7.** Unfortunately, this logic also results in an equally absurd situation if a defendant is being currently sentenced to any[ ]one of the crimes listed in Section 9802 for which the defendant may be legally sentenced to probation but not intermediate punishment. This may occur where the defendant has been convicted of indecent assault, level 5 robbery, level 5 or less theft by extortion and escape. (See, p. 3, Basic Sentencing Matrix).

**8.** See footnote 2.

Thus, when "eligible offender" was first defined, there was no prohibition in the Sentencing Guidelines excluding intermediate punishment eligibility for crimes such as murder, etc. Since the reenacted version of the "eligible offender" definition in Section 9802 of the CIPA is substantively identical to that included in the repealed CIPA and Sentencing Code definitions, this argument, however, loses its force.

The vast majority of crimes listed in Section 9802 are certainly crimes of violence. It would appear the legislature attempted to simply list all crimes deemed appropriate for incarceration and inappropriate for intermediate punishment, including the obvious, such as murder and rape. This directly fulfills the intent of the legislature, which is to extend intermediate punishment programs to non-violent offenders while excluding violent offenders. *Wegley*, supra (one of the intended purposes of intermediate punishment is "to provide more appropriate punishment/treatment for certain non-violent offenders"). It is common sense that violent criminals should be incarcerated and that precious bed space in our crowded prisons kept available for violent offenders. However, unfortunately, they also listed crimes for which probation is a legal sentencing option.

The Commonwealth's interpretation, that this [Appellee] and any other defendant with a prior record for any of the listed crimes, is forever barred from an intermediate punishment sentence, would exclude masses of non-violent offenders, especially those eligible for a county sentence, perhaps even merely probation, but who require intense drug and alcohol or mental health treatment. This interpretation is [an] anathema to the purpose of the intermediate punishment option, including, most notably, to

provide more appropriate punishment/treatment to nonviolent offenders and to help reduce county jail overcrowding while maintaining public safety. As is clearly illustrated in this case, the Commonwealth would have the [Appellee]'s prior, seventeen-year-old convictions for robbery and indecent assault render him ineligible for intermediate punishment, even though he is currently a non-violent offender, guilty of taking a $100 bench while drunk.

## II. Past Pattern of Violent Behavior as a Basis for Intermediate Punishment Ineligibility

The second issue is whether this [Appellee] is and always will be ineligible for a county intermediate punishment sentence because he has a history of criminal convictions which qualifies as a "past pattern of violent behavior." 42 Pa.C.S.A. § 9802. [Appellee]'s conviction history includes: 1985 simple assault; 1986 indecent assault, robbery, unlawful restraint and simple assault; 1988 simple assault; and 1997 terroristic threats. All but the 1997 crime were committed when he was in his 20's. He is now 43. We have no facts of record indicating the factual predicates of any of these crimes.

Although the phrase "present or past pattern of violent behavior" in the CIPA Section 9802 definition of "eligible offender" is not limited to convictions, but broadly includes a defendant's past or present behavior, the Commonwealth in this case bases its argument solely on [Appellee]'s conviction history. While these past convictions standing alone suggest this [Appellee]'s past pattern of violent behavior warrants consideration by the court at sentencing, it is not conclusive to this [Appellee]'s eligibility for an intermediate punishment sen-

tence. First, [Appellee]'s prior convictions have been taken into consideration by being computed into his prior record score and resultant impact on the current standard sentencing guideline applicable to him. Secondly, a court should always consider a defendant's prior history when sentencing. However, ... it is within a judge's discretion to view that behavioral history, consider the types of prior crimes, their factual predicates, arid especially how long ago those crimes and behaviors occurred in conjunction with [Appellee]'s current crime and situation, in sentencing a defendant.

It is this court's opinion this criminal history does not exclude this [Appellee] now nor for the rest of his life from receiving an intermediate punishment sentence. In this case, [Appellee], a 43 year-old, admitting an alcohol problem is what caused him to steal a bench, whose criminal history essentially consists of criminal acts committed in his 20's, presented the exact type of [Appellee] contemplated as appropriate for an intermediate punishment sentence, requiring, inter alia, alcohol treatment and intensive supervision. 61 P.S. § 1103 (repealed) and 42 Pa.C.S.A. § 9803 (CIPA's stated purpose).[9]

Trial Court Opinion, 04/16/2004, at 2–11 (footnotes in original).

■ ¶ 5 We find the trial court's position on and interpretation of the County Intermediate Punishment Act to be correct. An offender is ineligible for intermediate punishment when he or she is being sentenced in the instant case on one of the proscribed offenses and not when he or she merely has a prior conviction. Additionally, and as expressed in the trial

court's opinion, this eligibility is tempered by a determination as to whether the offender demonstrates a present or past pattern of violent behavior. This factor is subject to an abuse of discretion standard, as it is but a factor under intermediate punishment in the Sentencing Guidelines.

■ ¶ 6 The Commonwealth makes an additional claim of error regarding Appellee's sentence in that 204 Pa.Code § 303.12(a)(ii) requires an offender at Level 4 or Level 3, such as Appellee, to undergo a diagnostic assessment of dependency on alcohol or other drugs. Here, Appellee was sentenced without such an assessment; however, Appellee admitted his addiction to alcohol and the trial court imposed special conditions on his sentence including: "TASC [drug and alcohol] evaluation updated within 24 hours; AA/NA meetings no less than two per week and then as directed by the probation officer; obtain AA/NA sponsor and maintain no less than weekly contact ... no alcohol; and drug and alcohol outpatient treatment as directed." Order, 01/07/2004. In light of these conditions, we find that any error that may have occurred in failing to order the assessment presentence and delaying it 24 hours was harmless as the drug and alcohol factors were admitted to by Appellee, considered by the court, and appropriate evaluation and treatment ordered.

¶ 7 Finding no reversible error of law and no abuse of discretion, we affirm on the basis of the trial court opinion quoted above. The judgment of sentence is hereby affirmed.

¶ 8 Judgment of sentence affirmed.

---

9. The irony of the Commonwealth's argument is that should [Appellee] be held not eligible for intermediate punishment, I would re-sentence him to the proffered probationary sentence, a less severe sanction, originally agreed to by the Commonwealth.