J-S24034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| BRADY COLLIN DISTEFANO | : | |
| Appellant | : | No. 1365 WDA 2023 |

Appeal from the Judgment of Sentence Entered October 11, 2023
In the Court of Common Pleas of Indiana County Criminal Division at
No(s): CP-32-CR-0000416-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| BRADY COLLIN DISTEFANO | : | No. 1366 WDA 2023 |

Appeal from the Judgment of Sentence Entered October 11, 2023
In the Court of Common Pleas of Indiana County Criminal Division at
No(s): CP-32-CR-0000416-2017

BEFORE:   BOWES, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:       **FILED: September 17, 2024**

At docket number 1365 WDA 2023, Brady Collin DiStefano ("DiStefano")

appeals from the judgment of sentence entered in the Court of Common Pleas

of Indiana County following his plea of *nolo contendere* to the sole charge of

_____

[*] Former Justice specially assigned to the Superior Court.

involuntary manslaughter, 18 Pa.C.S.A. § 2504(a). Specifically, DiStefano challenges the discretionary aspects of his sentence.

At docket number 1366 WDA 2023, the Commonwealth cross-appeals averring the trial court erred in modifying the costs imposed upon DiStefano from $5,146.92 to $2,646.92.[1] After a careful review, we reverse the trial court's reduction of costs and reinstate the costs in the amount of $5,146.92. In all other respects, we affirm the judgment of sentence.

The relevant facts and procedural history are as follows: DiStefano, Caleb Zweig ("Zweig"), and Trevor King ("King") were students at Indiana University of Pennsylvania and fraternity brothers. On February 3, 2017, the three men attended an off-campus party, and as they walked home, DiStefano and Zweig engaged in a brief physical altercation, which resulted in Zweig's death.

The Commonwealth charged DiStefano with criminal homicide and aggravated assault. DiStefano filed an *omnibus* pretrial motion, which included a petition for a writ of *habeas corpus* in which DiStefano alleged the evidence presented at the preliminary hearing did not suffice to state a *prima facie* case against him. The trial court agreed, and on November 13, 2017, the trial court entered an order dismissing both of DiStefano's charges.

---

[1] As indicated *infra*, this Court consolidated DiStefano's and the Commonwealth's notices of appeal.

The Commonwealth appealed to this Court, which affirmed, in part, and remanded for further proceedings. *Commonwealth v. DiStefano*, 1785 WDA 2017, 2018 WL 5076959 (Pa.Super. filed 10/18/18) (unpublished memorandum). Specifically, this Court held the trial court correctly concluded that the Commonwealth failed to present sufficient evidence to establish a *prima facie* case of criminal homicide against DiStefano but that the trial court erred in finding the Commonwealth failed to present a *prima facie* case of aggravated assault against DiStefano.

On remand, DiStefano filed a motion *in limine* requesting that the trial court preclude the Commonwealth from presenting at his trial any evidence regarding Zweig's death. In making this request, DiStefano noted the homicide charge had been dismissed, and he argued the probative value would be outweighed by the danger of unfair prejudice. On November 14, 2019, the trial court granted, in part, and denied, in part, DiStefano's motion. Specifically, the trial court indicated it would permit the Commonwealth to present evidence that Zweig is deceased "to explain his absence to the jury at trial and why the expert testimony from a forensic pathologist is being presented." Trial Court Order, 11/14/19, at 3. However, the trial court ruled that, since it dismissed the criminal homicide charge, "no evidence shall be permitted to prove that [DiStefano] caused [Zweig's] death." *Id.*

The Commonwealth appealed to this Court arguing the trial court abused its discretion in finding that any evidence concerning the causation of Zweig's

death was irrelevant and unduly prejudicial. This Court agreed with the Commonwealth, reversed the trial court's order, and remanded for further proceedings. **Commonwealth v. DiStefano**, 236 A.3d 93 (Pa.Super. 2020), *reversed*, **Commonwealth v. DiStefano**, 265 A.3d 290 (Pa. 2021).

DiStefano filed a petition for allowance of appeal to our Supreme Court, which held this Court misapplied the relevant standard of review in reversing the trial court's order. Thus, on December 22, 2021, the Supreme Court vacated this Court's judgment, reinstated the trial court's order, and remanded for further proceedings. **See id.**

Thereafter, following jury selection, the parties reached a plea agreement, and on March 21, 2023, DiStefano, represented by counsel, entered a plea of *nolo contendere* to an amended charge of involuntary manslaughter, a misdemeanor of the first degree.[2] The plea agreement left sentencing to the discretion of the trial court.

On June 16, 2023, DiStefano proceeded to a sentencing hearing at which the Commonwealth presented testimony from nine people, who made victim impact statements. Specifically, Jono Sirovatka, a friend of Zweig, described Zweig as "kind, loyal, compassionate, generous, loving, smart, ambitious, funny, athletic, thoughtful, and handsome." N.T., 6/16/23, at 5. He testified

_____

[2] During the plea hearing, the Commonwealth moved to amend the information to replace the charge of aggravated assault with the charge of involuntary manslaughter. Given the plea agreement, the trial court granted the motion to amend. N.T., 3/21/23, at 3.

- 4 -

that Zweig's death "had a profound and irreversible effect on [him]." *Id.* at 7. Sirovatka indicated he has been diagnosed with "complicated grief or persistent complex bereavement disorder" resulting from Zweig's unexpected death. *Id.*

David Meit, a friend of the Zweig family, indicated he has watched Zweig's father, as well as his siblings, suffer from depression and anxiety brought about by Zweig's death. *Id.* at 11. Tracy Zweig Monaco, who is Zweig's aunt, testified the death of Zweig has had an "immeasurable" impact on her life, and she now suffers from panic attacks. *Id.* at 30. She described Zweig's father as "heartbroken" and "merely existing" since Zweig's death. *Id.* at 31.

Marisa Monaco, Erica Monaco, and Rachel Monaco, who are Zweig's first cousins, testified that Zweig "radiated warmth, compassion, and kindness[.]" *Id.* at 12. After Zweig's death, they observed Zweig's father "existing as a shell of himself through life, in agonizing pain without his son[.]" *Id.* They also observed their mother, who is Zweig's aunt, suffering from anxiety and stress after Zweig's death. *Id.* at 13. They indicated that Zweig's death left "inescapable emptiness and darkness in the family[.]" *Id.* at 17. They indicated they suffered from anxiety and depression after Zweig's death. *Id.* at 27.

Lily Zweig, who is Zweig's sister, described Zweig as funny and described the pain she has suffered since his death. *Id.* at 34-35. David

Zweig, who is Zweig's father, testified that the delay in his son receiving justice has caused the surviving family pain. *Id.* at 40. He testified he suffers from PTSD and depression with little joy in his life. *Id.* at 42. He asked the trial court to afford restitution for the financial hardship caused by DiStefano's actions and noted the Commonwealth had restitution documents as evidence. *Id.* Vera Sabbah Luxner, a family friend, asked for justice for the Zweig family. *Id.* at 36.

After hearing the victim impact statements, the trial court entered into evidence several defense exhibits, including several statements written in support of DiStefano. *Id.* at 50. For instance, in the letters, DiStefano's National Guard leader described DiStefano as a "role model" and someone who followed direction. *Id.* at 69. DiStefano's high school teacher described DiStefano as "a kind man." *Id.* at 71. A family friend described DiStefano as a "respectful" visitor in her home. *Id.* at 72. A relative described DiStefano as "a good student, peaceful, law-abiding, [and] a hardworking young man[.]" *Id.* at 73. DiStefano's current work supervisor described DiStefano as dedicated, responsible, and considerate. *Id.* at 74. DiStefano also offered into evidence his record while he served his country via the National Guard. *Id.*

Moreover, several people testified on behalf of DiStefano during sentencing. For instance, his mother, Deanna DiStefano, testified DiStefano is "a kind, sweet man," and he is "not a monster." *Id.* at 53. She testified he has remorse and, if he could, he would change the events of February 3,

- 6 -

2017. *Id.* Sheri McCleester, who is DiStefano's aunt, testified he is "a blessing to our family." *Id.* at 54. She described him as kind and loving. *Id.*

Donna Gillin, who is DiStefano's grandmother, testified that he has done many "good things" in his life, and it is "unfortunate that something like this occurred." *Id.* at 55. She indicated DiStefano is "not a threat to anybody." *Id.* She noted his military service. Eric DiStefano, who is DiStefano's father, testified that DiStefano is not a monster, but he is a "kind, loving, affection, and very unselfish human being." *Id.* at 56. He noted that, after Zweig's death, DiStefano was upset and had a hard time dealing with the loss of his friend. *Id.* He also noted that, after Zweig's death, DiStefano continued to serve in the National Guard, married, fathered two children, and became a good provider. *Id.* at 57. He asked for leniency in sentencing.

Ryley Shriver, who is DiStefano's wife, testified they have two children, and DiStefano works very hard to support the family. *Id.* She has watched DiStefano mature. *Id.* at 58. She described him as a "loving, supportive, and caring person" who "loves his children more than anything[.]" *Id.*

DiStefano made a statement on his own behalf. He indicated that Zweig was "a very good friend [and]…very important to [him]." *Id.* at 59. He acknowledged the grieving process has been difficult for the Zweig family, and he indicated he was very sorry for their loss. *Id.* He noted that, now that he has children, he can't imagine what the Zweig family is going through. *Id.* DiStefano acknowledged that he put himself in a "bad situation" the night of

Zweig's death, and he is willing to accept whatever punishment the trial court imposes. *Id.*

The Commonwealth reminded the trial court of the sentencing guidelines for involuntary manslaughter, as well as the criminal history of the case. *Id.* at 61. The Commonwealth noted that the defense's exhibit regarding DiStefano's service in the National Guard indicated that, as to DiStefano's reenlistment eligibility, it was a "RE-3." *Id.* The Commonwealth indicated "RE-3" means "you're not welcome back in the military. It is waivable, but you're not welcome back." *Id.* at 62. Further, the Commonwealth noted that, during his statement, DiStefano never faced the Zweig family or apologized for his actions. *Id.*

Defense counsel reminded the trial court that, on the night of the incident, both Zweig and DiStefano were intoxicated. *Id.* Defense counsel noted that, after Zweig's death, DiStefano cooperated with the police, he gave a statement, he allowed the police to take photographs of his body, and he voluntarily gave the police his phone. *Id.* at 64, 68. He indicated that DiStefano is a "God-fearing man," and there is no evidence that he "was a violent person, a troublemaker, a person that liked to fight." *Id.* at 66. In fact, he averred that DiStefano's character is to the contrary. *Id.*

Defense counsel indicated DiStefano has taken the justice system and his case very seriously. *Id.* at 67. He has always been respectful to the court and all parties involved. *Id.* Defense counsel indicated DiStefano is not a

- 8 -

violent person, and he has been a law-abiding citizen. *Id.* at 69. He noted that DiStefano never received any discipline, reports of misconduct, or detentions while in high school or college. *Id.* He served six years in the National Guard's military police with no discipline, and, in fact, he received medals, badges, and commendations. *Id.* at 70. DiStefano explained the "RE-3" designation does not mean that he cannot reenlist with the National Guard; but rather, he would be ineligible to serve in the military police division because of his current plea. *Id.*

Defense counsel requested the trial court impose a lenient sentence so that DiStefano can continue providing for his family. *Id.* at 71. He noted that DiStefano has no traffic violations or any other charges since Zweig's death. *Id.* Also, DiStefano has not violated his bail conditions, including using alcohol. *Id.* Defense counsel pointed to DiStefano's presentence investigation report, which reveals DiStefano has a long history of employment, and he currently works as a mail carrier for the United States Post Office. *Id.* at 72, 74. Defense counsel informed the trial court that DiStefano underwent an alcohol assessment, and he abided by all recommendations. *Id.* at 78.

Defense counsel argued that DiStefano is not a danger to the community, there is little risk of recidivism, and he is amenable to treatment. *Id.* at 75, 81. Regarding DiStefano's rehabilitative needs, defense counsel argued there is nothing to be served by DiStefano being sentenced in the aggravated range. *Id.* at 75. However, defense counsel argued that many

factors call for a mitigated range sentence. *Id.* He noted DiStefano's offense gravity score is 6, and his prior record score is 0. *Id.*

Defense counsel asked that the trial court impose solely probation or county intermediate punishment. *Id.* at 77. He noted DiStefano desires to "save" his employment and remain a productive member of society. *Id.* He also noted that, if the trial court orders restitution, DiStefano needs to work to pay the restitution. *Id.*

At the conclusion of the sentencing hearing, the trial court sentenced DiStefano to nine months to two years less one day in county jail to be followed by a consecutive term of two years of reporting probation. The trial court noted this was "within the standard range of the sentencing guidelines." *Id.* at 88. Defense counsel asked whether DiStefano was precluded from applying for work release. *Id.* at 89. The trial court responded that "work release will not be granted in this matter. It's [the trial court's] intention that [DiStefano] serve the nine months." *Id.* The trial court ordered DiStefano to pay the costs of prosecution, which totaled $5,146.92, as well as a $500.00 fine. Additionally, the trial court ordered DiStefano to pay $15,427.84 in restitution to David Zweig (the victim's father) and $7,713.79 to the Victim Compensation Assistance Program.

On June 26, 2023, DiStefano filed a timely, counseled post-sentence motion seeking a modification of his sentence. Specifically, as it pertains to his sentence of nine months to two years less one day in prison, to be followed

- 10 -

by two years of reporting probation, DiStefano alleged the trial court abused its discretion in imposing an excessive sentence without properly considering the requirements of 42 Pa.C.S.A. § 9721(b). DiStefano further suggested the trial court abused its discretion in failing to consider and/or not imposing work release, thus rendering the sentence unreasonable. As it pertains to the order of restitution, DiStefano alleged the award was excessive. He also averred the costs imposed by the trial court were not all "necessary expenses," and he sought a modification of the costs.

The Commonwealth filed a brief in opposition to DiStefano's post-sentence motion, and on July 10, 2023, the trial court held a hearing on DiStefano's post-sentence motions. By order and opinion filed on October 11, 2023, the trial court granted, in part, and denied, in part, DiStefano's post-sentence motion. Specifically, the trial court granted DiStefano's request for the modification of costs. In this respect, the trial court held the following:

> [A] portion of the challenged [costs] is the $2,500.00 consultation fee to Dr. Jennifer Hammers. The [trial] court finds that the Commonwealth has not met its burden to show, by a preponderance of the evidence, that the expense incurred as a fee to Dr. Hammers was a necessary cost of prosecution, as her name was not on the Commonwealth's final witness list for trial.
>
> The [trial] court grants the motion to modify the sentence of costs. The [trial] court will amend the order dated June 16, 2023, to reflect costs in the amount of $2,646.92.

Trial Court Opinion, filed 10/11/23, at 9. The trial court denied DiStefano's post-sentence motion in all other respects. The trial court's October 11, 2023, order specifically provided the June 16, 2023, sentencing order was amended

- 11 -

to provide as follows: "The defendant shall pay costs of prosecution in the amount of $2,646.92; In all other respects, the [trial] court's order dated June 16, 2023, shall remain in full force and effect."  Trial Court's Order, filed 10/11/23, at 1.

On November 6, 2023, DiStefano filed a timely counseled notice of appeal, and, on that same date, the Commonwealth filed a timely cross-appeal.[3]  This Court consolidated the appeals.  By orders entered on November 7, 2023, the trial court directed DiStefano and the Commonwealth to file Rule 1925(b) statements, both parties timely complied, and the trial court filed a brief Pa.R.A.P. 1925(a) opinion indicating it was relying on its October 11, 2023, opinion.

On appeal, DiStefano presents the following in his "Statement of the Questions Involved" (verbatim):

> Whether the trial court abused its discretion in imposing a sentence of not less than 9 months nor more than 2 years less one day, followed by a consecutive probationary term of 2 years for the crime of involuntary manslaughter by ignoring [DiStefano's] rehabilitative needs as provided at 42 Pa.C.S.A. § 9721(b), and so deviated from the fundamental norms of the sentencing code, and by categorically refusing work release notwithstanding that [DiStefano] was statutorily eligible for work release pursuant to 42 Pa.C.S.A. § 9813(d)?

DiStefano's Brief at 7 (unnecessary capitalization and suggested answer omitted).

---

[3] We note that, pursuant to Pa.R.Crim.P. 721, the Commonwealth was permitted to file an appeal in this matter.

In its cross-appeal, the Commonwealth presents the following issues in its "Statement of the Questions Involved" (verbatim):

> I. [DiStefano] has failed to establish that a substantial question exists or that the sentencing court abused its discretion when the sentencing court imposed a guideline sentence of incarceration for a period of not less than 9 months nor more than 2 years less one day, followed by a consecutive probationary term of 2 years for the crime of involuntary manslaughter and denied work release.
>
> II. The Commonwealth submits that an error of law and an abuse of discretion occurred when the sentencing court modified [DiStefano's] sentence of costs.

Commonwealth's Brief at 8 (unnecessary capitalization and bold omitted).

Initially, we address DiStefano's issue within which he intertwines two sentencing claims.[4] DiStefano contends the trial court abused its discretion in imposing a sentence of not less than nine months nor more than two years less one day, to be followed by a probationary term of two years, without consideration of DiStefano's rehabilitative needs as mandated by 42 Pa.C.S.A. § 9721(b).

Further, DiStefano contends that, in imposing a term of total confinement without considering and/or permitting work release, the trial court abused its discretion in failing to impose an individualized sentence. DiStefano specifically acknowledges that he is not entitled to work release;

---

[4] The Commonwealth's first issue is intertwined with DiStefano's first issue. Essentially, the Commonwealth's first issue is presented as a counter argument in the Commonwealth's role as the appellee.

- 13 -

however, he requests we "remand for resentencing with direction [to the trial court] to consider work release pursuant to [42 Pa.C.S.A. §] 9813(a)." DiStefano's Brief at 19. In this vein, he avers:

[T]he [t]rial [c]ourt abused its discretion when, taking into consideration [DiStefano's] lack of a criminal record, his employment history, his military service, and his family situation, it categorically refused to consider work release pursuant to 42 Pa.C.S.[A.] § 9813(a) even though that refusal abnegated his rehabilitation and mandate to pay restitution. Under such circumstances, the sentence of not less than 9 months nor more than 2 years less one day was unreasonable.

*Id.* at 18.

As it pertains to DiStefano's claim that the trial court imposed an excessive sentence without consideration of his rehabilitative needs as mandated by 42 Pa.C.S.A. § 9721(b), this is a challenge to the discretionary aspects of DiStefano's sentence. *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa.Super. 2016) (citation omitted).

Moreover, as it pertains to DiStefano's claim the trial court erred in failing to permit work release, we note that work release is a sentencing option set forth in the Pennsylvania County Intermediate Punishment Act ("the PCIP Act"), 42 Pa.C.S.A. §§ 9801-9813. Specifically, the PCIP Act relevantly provides the following:

**§ 9813. Work release or other court order and purposes**

**(a) Generally.--**Notwithstanding any provision of law, if any offender has been sentenced to undergo imprisonment in a county jail for a term of less than five years, the court, at the time of sentence or at any time thereafter upon application made in accordance with this section, may enter an order making the offender eligible to leave the jail during necessary and reasonable

- 14 -

> hours for the purpose of working at his employment, conducting his own business or other self-employed occupation, including housekeeping and attending to the needs of family, seeking employment, attending an educational institution, securing medical treatment or for other lawful purposes as the court shall consider necessary and appropriate.

42 Pa.C.S.A. § 9813(a) (bold in original).

Here, assuming, *arguendo*, Appellant is statutorily eligible for work release,[5] it is well-settled that the grant of work release is within the trial court's discretion. **See id.** ("…the court,…may enter an order making the offender eligible to leave the jail during necessary and reasonable hours for the purpose of working at his employment.…"). **See also Commonwealth v. Williams**, 868 A.2d 529, 534 (Pa.Super. 2005) (explaining that it is within the trial court's discretion to permit work release to a statutorily eligible offender). Accordingly, DeStefano's claim that the trial court erred in failing to consider and/or permit work release, thus failing to impose an

_____

[5] The PCIP Act further sets forth what constitutes an "eligible offender." 42 Pa.C.S.A. § 9802 (definitions). Specifically, the PCIP Act provides an "eligible offender" is "a person convicted of an offense who would otherwise be sentenced to a county correctional facility, who does not demonstrate a present or past pattern of violent behavior and who would otherwise be sentenced…to total confinement pursuant to section 9725 (relating to total confinement)." 42 Pa.C.S.A. § 9802. Also, the PCIP Act provides that "eligible offender" does not include an offender with a current conviction or a prior conviction within the past ten years for certain enumerated crimes. **See id.** However, involuntary manslaughter, 18 Pa.C.S.A. § 2504(a), is not included within this list.

individualized sentence, raises a challenge to the discretionary aspects of DiStefano's sentence.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." **Derry**, 150 A.3d at 991 (citation omitted). Rather, before reaching the merits of such claims, we must determine:

(1) whether the appeal is timely; (2) whether [the] [a]ppellant preserved his issues; (3) whether [the] [a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

**Commonwealth v. Corley**, 31 A.3d 293, 296 (Pa.Super. 2011) (citation omitted). Here, assuming, *arguendo*, all of these requirements have been met, we conclude DiStefano's sentencing claims are meritless.

Our standard of review concerning the discretionary aspects of sentencing is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Hyland**, 875 A.2d 1175, 1184 (Pa.Super. 2005).

42 Pa.C.S.A. § 9721(b) offers the following guidance to the trial court's sentencing determination:

[T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the

- 16 -

offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b).

Furthermore,

Section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the sentencing court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable." 42 Pa.C.S.A. § 9781(c). Under 42 Pa.C.S.A. § 9781(d), the appellate courts must review the record and consider the nature and circumstances of the offense, the sentencing court's observations of the defendant, the findings that formed the basis of the sentence, and the sentencing guidelines. The weighing of factors under 42 Pa.C.S.A. § 9721(b) is exclusively for the sentencing court, and an appellate court may not substitute its own weighing of those factors. The primary consideration, therefore, is whether the court imposed an individualized sentence, and whether the sentence was nonetheless unreasonable for sentences falling outside the guidelines, or clearly unreasonable for sentences falling within the guidelines, pursuant to 42 Pa.C.S.A. § 9781(c).

*Commonwealth v. Bricker*, 41 A.3d 872, 875-76 (Pa.Super. 2012) (citations

omitted).

When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation. Where presentence reports exist, we shall…presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

*Commonwealth v. Antidormi*, 84 A.3d 736, 761 (Pa.Super. 2014)

(quotation marks and quotation omitted).

- 17 -

Moreover, 42 Pa.C.S.A. § 9725 sets forth the following regarding a sentence of total confinement:

**§ 9725. Total confinement**

The court shall impose a sentence of total confinement if, having regard to the nature and circumstances of the crime and the history, character, and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:

(1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;

(2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or

(3) a lesser sentence will depreciate the seriousness of the crime of the defendant.

42 Pa.C.S.A. § 9725 (bold in original).

Regarding work release, this Court has explained:

The Legislature's intent [behind the PCIP Act] was: "to give judges another sentencing option which would lie between probation and incarceration with respect to sentencing severity; to provide a more appropriate form of punishment/treatment for certain types of non-violent offenders; to make the offender more accountable to the community; and to help reduce the county jail overcrowding problem while maintaining public safety."

*Williams*, 868 A.2d at 534 (citations omitted).

In the case *sub judice*, to the extent DiStefano contends the trial court abused its discretion in failing to consider the imposition of work release, we find no merit. Simply put, the record reveals that, upon DiStefano's request regarding work release, the trial court responded that "work release will not be granted in this matter. It's [the trial court's] intention that [DiStefano]

serve the nine months." N.T., 6/16/23, at 89.  Thus, the trial court considered, but rejected, DiStefano's request for work release.

Moreover, as it relates to the reasons the trial court imposed a sentence of not less than nine months nor more than two years less one day, to be followed by a probationary term of two years, as well as the reasons it rejected DiStefano's request for work release, the trial court relevantly stated the following on the record in imposing DiStefano's sentence:

> [T]he offense of involuntary manslaughter has an offense gravity score of 6 and [DiStefano] has a prior record score of zero. And, therefore, the standard range of sentencing guidelines provide for a sentence of 3 to 12 months in that standard range. Now, I'm confident that all of the parties knew all of those facts and knew that standard range.
>
> ***
>
> I firmly believe that justice is found by giving the parties the certainty that they bargained for, which is sentencing in the standard range of the sentencing guidelines.

*Id.* at 84.

Additionally, in denying DiStefano's post-sentence motion regarding his claims the trial court imposed an excessive sentence without consideration of his rehabilitative needs, as well as failed to impose an individualized sentence in denying his request for work release, the trial court indicated the following:

> Prior to sentencing, the Indiana County Probation Office prepared a presentence investigation report at the request of the [trial] court; the report was received and reviewed by the [trial] court.  It is important to note that the standard range of the sentencing guidelines, as set forth in the presentence report, provided for a minimum period of incarceration of 3-12 months. The [trial] court also notes that numerous impact letters were received and reviewed by the [trial] court prior to sentencing.  The

impact letters were authored by family members and friends of Caleb Zweig. The [trial] court also received and reviewed letters authored by family members and friends of [DiStefano].

A sentencing hearing was conducted by the [trial] court on June 16, 2023. During the hearing, [the trial] court received additional letters and documents from the Commonwealth and [DiStefano]; the [trial] court also received oral statements from family members and friends of the victim and family members and friends of [DiStefano]. After careful consideration of all matters presented, the [trial] court ordered that [DiStefano] undergo a period of incarceration in the Indiana County Jail of not less than 9 months nor more than 2 years less 1 day followed by a consecutive probationary term of 2 years.

\*\*\*

[DiStefano] challenges the discretionary aspects of his sentence. [DiStefano] pled *nolo contendere* to Involuntary Manslaughter, a misdemeanor of the first degree. [DiStefano] has a prior record score of 0. Therefore, the Basic Sentencing Matrix, as applied to this matter, provides for a minimum period of incarceration of 3-12 months within the standard range of the sentencing guidelines. The [trial] court's sentence of incarceration for a period of not less than 9 months nor more than 2 years less 1 day is clearly within the standard range of the sentence guidelines. And when the [trial] court imposes a sentence that is within the standard range of the sentencing guidelines, the "aggrieved party" must demonstrate that the sentence is clearly unreasonable. ***See Commonwealth v. Drumgoole***, 491 A.2d 1352 (Pa.Super. 1985)[.]

The [appellate court], in the case of ***Drumgoole***, stated the following:

> In determining whether a particular sentence is 'clearly unreasonable' or 'unreasonable,' the [] court must consider the defendant's background and characteristics as well as the particular circumstances of the offense involved, the trial court's opportunity to observe the defendant, the presentence investigation report, if any, the Sentencing Guidelines as promulgated by the Sentencing Commission, and the 'findings' upon which the trial court based its sentence.

***Id.*** at 1354.

Further, the [appellate] court has stated that "[w]here the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those consideration along with mitigating statutory factors." ***Commonwealth v. Finnecy***, 135 A.3d 1028, 1038 (Pa.Super. 2016)[.]

[DiStefano] requests that the [trial] court modify the [length] of the sentence imposed and approve work release. The [trial] court must deny this motion. As stated above, the [trial] court had the benefit of a presentence investigation [report]. The [trial] court carefully considered all of the information provided prior to the sentencing hearing and at the sentencing hearing, and the [trial] court set forth its reasoning and basis for the sentence[.] The [trial] court acknowledges that from the date of the incident until the date of the sentencing hearing, [DiStefano] has made positive changes; for example, [DiStefano] obtained gainful employment, he got married, and he had children. However, the [trial] court cannot ignore that [DiStefano's]…actions led to the death of Caleb Zweig. Therefore, the [trial] court firmly believes that a sentence of a period of total confinement must be ordered because "a lesser sentence will depreciate the seriousness of the crime of the defendant." ***See*** 42 Pa.C.S.A. [§] 9725(3). The [trial] court finds that the sentence imposed remains appropriate.

Trial Court Opinion, filed 10/11/23, 1-5 (some citations and quotation marks omitted).

We find no abuse of discretion. Specifically, contrary to DiStefano's assertion, in imposing a sentence of not less than nine months nor more than two years less one day, to be followed by a probationary term of two years, as well as in denying DiStefano's request for work release, the trial court considered DiStefano's rehabilitative needs under 42 Pa.C.S.A. § 9721(b). Further, the trial court, which acknowledged DiStefano's presentence investigation report, considered the mitigating circumstances, including

DiStefano's lack of a criminal record, employment history, military service, and family situation. The trial court imposed an individualized sentence, and we conclude the sentence is not "clearly unreasonable." **See Bricker**, **supra**. Thus, we find no merit to DiStefano's sentencing challenges.

Next, we turn to the Commonwealth's issue presented in its cross-appeal. The Commonwealth submits the trial court erred in modifying the costs for which DiStefano was responsible. Specifically, the Commonwealth contends that, pursuant to 16 P.S. § 1403, it proved, by a preponderance of the evidence, that the fee of Dr. Jennifer Hammers, who is a forensic pathologist, was necessary to the prosecution under the facts and circumstances of this case.

Relevantly, our Legislature has provided the following: "**Expenses incurred by district attorney**…In any case where a defendant is convicted and sentenced to pay the costs of prosecution and trial, the expenses of the district attorney in connection with such prosecution shall be considered a part of the costs of the case and be paid by the defendant." 16 P.S. § 1403 (bold in original).[6]

_____

[6] We note that, on May 8, 2024, effective in 60 days, our Legislature repealed 16 P.S. § 1403 and replaced it with 16 Pa.C.S.A. § 14303, which relevantly provides: "If a defendant is convicted and sentenced to pay the costs of prosecution and trial, the expenses of the district attorney in connection with the prosecution shall be considered a part of the costs of the case and shall be paid by the defendant." 16 Pa.C.S.A. § 14303. **See** PA LEGIS 2024-14, 2024 Pa. Legis. Serv. Act 2024-14 (S.B. 945). In the case *sub judice*,
*(Footnote Continued Next Page)*

Costs of prosecution attributable to the defendant "are those which are necessary for prosecution when considered in light of the peculiar facts and circumstances of each case[.]" ***Commonwealth v. Cutillo***, 440 A.2d 607, 609 (Pa.Super. 1982). The Commonwealth must provide the defendant with "a reasonably specific bill of costs and show how the costs were necessary to the prosecution." ***Commonwealth v. Coder***, 415 A.2d 406, 410 (Pa. 1980). The Commonwealth bears the burden of justifying, by a preponderance of the evidence, that the imposition of costs on a defendant is proper. ***See Commonwealth v. Gill***, 432 A.2d 1001, 1004 (Pa.Super. 1981).

Here, the trial court originally directed DiStefano to pay a total of $5,146.92 for the costs of prosecution. DiStefano filed a timely post-sentence motion challenging the imposition of costs, and on July 10, 2023, the trial court held a hearing on DiStefano's post-sentence motion.

During the post-sentence hearing, Alexis Rieger, the office manager at the District Attorney's Office, testified she documented the costs incurred by the prosecution in this matter. N.T., 7/10/23, at 42. As it pertains to Dr. Hammers, Ms. Rieger testified Dr. Hammers, who is a forensic pathologist, reviewed "material pertinent to forming medicolegal opinions[.]" ***Id.*** at 48.

---

DiStefano was sentenced prior to the effective date of 16 Pa.C.S.A. § 14303. The parties do not dispute that 16 P.S. § 1403 is applicable to the instant matter.

Dr. Hammers billed the District Attorney's Office $2,500.00 for her services. *Id.* Ms. Rieger provided this bill to the Clerk of Courts as part of the necessary costs associated with the prosecution. *Id.* She provided the bill well before the time of sentencing. *Id.* at 49.

Moreover, during the post-sentence hearing, District Attorney Robert F. Manzi, Jr., who was the prosecuting attorney in this matter, asked DiStefano whether he would stipulate that all of the witnesses named did appear and were necessary witnesses for the prosecution. *Id.* at 55. The District Attorney indicated that, if DeStefano would not so stipulate, he would put the witnesses on the stand or otherwise provide testimony to that effect. *Id.* DiStefano's attorney indicated "Yes" to the stipulation. *Id.* The trial court took notice of the parties' stipulation. *Id.* at 57. Specifically, the trial court noted "[c]osts, we're talking about fact witnesses, expert witnesses, stipulation that those are necessary." *Id.*

Thereafter, in ruling on DiStefano's post-sentence motion, the trial court relevantly indicated the following regarding costs:

> A portion of the challenged amount is the total cost of transportation and lodging of the witnesses who were subpoenaed to testify at trial; this amount is $2,162.92. The [trial] court finds that these costs were necessary costs of prosecution, as these witnesses were subpoenaed to testify. The [trial] court notes that the plea in this matter was entered on the day after jury selection and just prior to the beginning of trial, therefore the transportation and lodging costs were actually and understandably incurred.
>
> Another portion of the challenged amount is the $2,500.00 consultation fee to Dr. Jennifer Hammers. The [trial] court finds that the Commonwealth has not met its burden to show, by a preponderance of the evidence, that the expense incurred as a fee

to Dr. Hammers was a necessary cost of prosecution, as her name was not on the Commonwealth's final witness list for trial.

Trial Court Opinion, filed 10/11/23, at 9.

Accordingly, the trial court granted DiStefano's post-sentence motion to modify costs and, subtracting the $2,500.00 consultation fee to Dr. Hammers, directed DiStefano to pay $2,646.92 in costs.

The Commonwealth argues the trial court has misconstrued the record. Specifically, the Commonwealth notes the docket entries reveal that on March 13, 2023, which is prior to the day DiStefano's trial was set to commence and his plea of *nolo contendere* occurred, the Commonwealth filed an amended pretrial statement and amended witness list, which added Dr. Hammers as an expert witness for trial. *See* Commonwealth's Brief at 22.

Our review of the certified record confirms the Commonwealth's assertion. Specifically, the Commonwealth filed the following on March 13, 2023:

<u>Commonwealth's Amended Pretrial Statement</u>

AND NOW, comes the Commonwealth of Pennsylvania by and through Robert F. Manzi, Jr., District Attorney, and respectfully submits the following Amended Witness List:

<u>Commonwealths' Amended Witness List</u>

The Commonwealth's amended witness list add[s] [an] expert witness as follows:

Doctor Jennifer Hammers
**** 8th Avenue
Beaver Falls, PA 15010

- 25 -

Commonwealth's Amended Pretrial Statement and Witness List, filed 3/13/23, at 1 (underline in original).

Accordingly, since the sole reason provided by the trial court for holding Dr. Hammers' fee was not a necessary cost of prosecution, *i.e.*, her name was not on the Commonwealth's final witness list for trial, is not supported by the record, we reverse the trial court's October 11, 2023, modification of costs and reinstate the original amount of costs, $5,146.92, which includes Dr. Hammers' fee.

For all of the foregoing reasons, we reverse the trial court's reduction of costs and reinstate the original costs in the amount of $5,146.92. In all other respects, we affirm the judgment of sentence.

Judgment of sentence reversed, in part, and affirmed, in part.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 09/17/2024

- 26 -